Geneva ROLAND, Plaintiff–Appellee,

v.

E.W. PHILLIPS; David Benjamin; Lin Harrell, Defendants–Appellants.

No. 93–8233.

United States Court of Appeals, Eleventh Circuit.

April 15, 1994.

William C. Sanders, Thomasville, GA, for defendants-appellants.

Leonard Farkas, Albany, GA, for plaintiff-appellee.

Before BIRCH, Circuit Judge, RONEY and CLARK, Senior Circuit Judges.

BIRCH, Circuit Judge:

In this interlocutory appeal, we decide for the first time in our circuit whether a county sheriff and deputy sheriffs are accorded absolute quasi-judicial immunity for acts done to enforce valid judicial orders. The district court denied these county law enforcement officials summary judgment. We REVERSE and REMAND.

## I. BACKGROUND

Plaintiff-appellee Geneva Roland is the president of Roland Well Drilling, Inc., which owns and operates a water distribution system in the Robinwood Subdivision of Bainbridge, Georgia. Following notice, at approximately noon on December 24, 1991, Roland Well Drilling disconnected all water service to the Robinwood Subdivision because some customers had failed to pay for previous service. A Decatur County Superior Court judge issued a temporary restraining order, which provides in pertinent part:

> WHEREAS the Defendants [1] are in immediate need of water service for their

---

1. This case arises from a case that had been pending in the Decatur County Superior Court for three years. That case concerned a dispute between Roland Well Drilling and certain Robinwood Subdivision property owners to whom the company provided water service. Pursuant to a telephone conference among the court and the parties, it was agreed that Roland and her company would not terminate water service to the Robinwood Subdivision, provided that the residents, who had failed to pay for previous service, would make payment immediately. Most, if not all, of the implicated residents mailed their payments on December 23, 1991, and December 24, 1991. Nevertheless, the water service to the Robinwood Subdivision residents was terminated by agents of Roland Well Drilling by breaking the pipes and doing other damage to the water system resulting in eliminating the water supply to Robinwood Subdivision residents on Christmas Eve. The temporary restraining order was issued in the pending state-court case, hence the

health, well being, and general preparations for the celebration of the Christmas holiday,

IT IS HEREBY ORDERED that Plaintiffs are restrained and enjoined from terminating water service to the Defendants until further order of this Court, and *the Sheriff of Decatur County is instructed to locate Plaintiffs and accompany them back to Robinwood subdivision where the Plaintiffs are ordered to restore water service to each and every home where they disconnected water service earlier today.* The Sheriff and his lawful deputies are hereby given all authority allowed them under Georgia law to carry out the directives of this Order. To the extent the Defendants are capable of doing so, they are hereby given the authority to restore the water service themselves.

R1–6–Affidavit of Charles L. Harrell, Ex. A at 2 (emphasis added).

An executed copy of the temporary restraining order was delivered on the afternoon of December 24, 1991, to defendant-appellant Lin Harrell, a deputy sheriff with the Decatur County Sheriff's Department. At approximately 5:30 P.M., Deputy Harrell was en route to Donalsonville, Georgia, where Roland resided, when he observed an automobile, occupied by Roland as a passenger, leave the Robinwood Subdivision. Deputy Harrell stopped the automobile, served a copy of the restraining order on Roland, and advised her of its contents.

When Deputy Harrell ordered Roland to return to Bainbridge and to reconnect water service to the Robinwood Subdivision, she refused, told him that she did not have the proper tools, and stated that it would be too dark by the time that she returned. Deputy Harrell advised that, if she persisted in her refusal to comply with the restraining order, then she would be obstructing him in performing his duties as a law enforcement officer. Roland responded that she would spend Christmas in jail rather than reconnect the water service to Robinwood Subdivision.

When Deputy Harrell asked Roland to exit the automobile, the driver, her son, drove away with Roland in the car. Roland's son drove her to the Decatur County Sheriff's Department in Bainbridge, and Deputy Harrell followed them there. Upon arrival, Roland exited the automobile and entered the sheriff's department, where defendant-appellant, Deputy Sheriff David Benjamin was present. Deputy Harrell informed Deputy Benjamin that Roland was to be charged with obstructing a law enforcement officer in the discharge of his duties. When Roland asked Deputy Benjamin whether she could leave the sheriff's department, he told her that she was not free to go because of the pending charge.

Subsequently, a conference call including Roland, her attorney, defendant-appellant Sheriff E.W. Phillips, the attorney for the defendants in the pending lawsuit, and a senior judge of the South Georgia Judicial Circuit,[2] occurred. The judge asked Roland whether she was going to comply with the restraining order. Roland told him that she would not because she was unable to get the necessary parts to restore water service. The judge then told Sheriff Phillips to hold Roland in jail. To be certain that he correctly understood the judge's instruction, Sheriff Phillips asked for confirmation that he was to incarcerate Roland. The judge reiterated his instruction and told Sheriff Phillips to "lock her up." By affidavit, Sheriff Phillips explains that he interpreted the judge's instruction as requiring him to imprison Roland "for obstructing a law enforcement officer in the lawful discharge of his duties and for being in contempt of court." R1–6–Affidavit of E.W. Phillips at 2. She was held overnight and released the next morning.

Roland filed this civil rights action under 42 U.S.C. § 1983. Claiming absolute quasi-judicial immunity, defendants-appellants moved for summary judgment and dismissal with supporting affidavits. Alternatively, defendants-appellants contended that they were entitled to qualified immunity. Without any analysis of absolute quasi-judicial immunity, the district court denied defendants-appel-

reference to "defendants" and "plaintiffs" within the subject restraining order.

**2.** The judge, who issued the temporary restraining order, was unavailable.

lants' summary judgment motion in a two-paragraph order. This appeal ensued.

## II. DISCUSSION

▇ The denial of a claim of absolute immunity, including quasi-judicial immunity, is immediately appealable under the collateral order doctrine. *Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1507 (11th Cir. 1990) (citing *Nixon v. Fitzgerald,* 457 U.S. 731, 741–43, 102 S.Ct. 2690, 2697–98, 73 L.Ed.2d 349 (1982)). The rationale behind such an interlocutory appeal is that a pretrial order, which conclusively decides a claim of right separable and independent from the principal action, should not be deferred until adjudication of the entire case. *Schopler v. Bliss,* 903 F.2d 1373, 1377 (11th Cir.1990). "The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." [3] *Antoine v. Byers & Anderson, Inc.,* — U.S. —, —, 113 S.Ct. 2167, 2169, 124 L.Ed.2d 391 (1993).

▇ Absolute quasi-judicial immunity derives from absolute judicial immunity. *Turney v. O'Toole,* 898 F.2d 1470, 1474 (10th Cir.1990). Judges are absolutely immune from civil liability under section 1983 for acts performed in their judicial capacity, provided such acts are not done in the " 'clear absence of all jurisdiction.' " *Stump v. Sparkman,* 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978) (quoting *Bradley v. Fisher,* 13 Wall. 335, 351, 20 L.Ed. 646 (1872)); *see Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967). Nonjudicial officials are encompassed by a judge's absolute immunity when their official duties "have an integral relationship with the judicial process." *Ashbrook v. Hoffman,* 617 F.2d 474, 476 (7th Cir.1980). Like judges, these officials must be acting within the scope of their authority. *See Property Management & Invs., Inc. v. Lewis,* 752 F.2d 599, 603 (11th Cir.1985) (corporate receiver pro-

tected by judicial immunity in executing orders of appointing judge because complaint did not allege that he acted outside his authority). Thus, we determine the absolute quasi-judicial immunity of a nonjudicial official through a *functional* analysis of the action taken by the official in relation to the judicial process. *See Antoine,* — U.S. at —, 113 S.Ct. at 2171; *Burns v. Reed,* 500 U.S. 478, 485–86, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991); *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988); *Ashbrook,* 617 F.2d at 576; *see also Schopler,* 903 F.2d at 1380 (officials performing judicial functions traditionally are afforded absolute immunity).

Other circuits have held that law enforcement officials executing a *facially valid court order* are protected by absolute quasi-judicial immunity. *See, e.g., Valdez v. Denver,* 878 F.2d 1285 (10th Cir.1989) (sheriff and sheriff's deputies took plaintiff into custody pursuant to judicial order); *Coverdell v. Department of Social & Health Servs.,* 834 F.2d 758 (9th Cir.1987) (child protective services worker removed newborn infant from hospital and placed her in temporary shelter pursuant to court order); *Henry v. Farmer City State Bank,* 808 F.2d 1228 (7th Cir.1986) (sheriff participated in execution of foreclosure sale pursuant to judgment of foreclosure); *Tymiak v. Omodt,* 676 F.2d 306 (8th Cir.1982) (per curiam) (sheriff evicted plaintiff from home in compliance with court order); *Fowler v. Alexander,* 478 F.2d 694 (4th Cir.1973) (sheriff and jailer confined plaintiff pursuant to a court order). "Enforcing a court order or judgment is intrinsically associated with a judicial proceeding." *Valdez,* 878 F.2d at 1288. These implementing individuals "are themselves 'integral parts of the judicial process.' " *Coverdell,* 834 F.2d at 765 (quoting *Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 1116, 75 L.Ed.2d 96 (1983)).

The Tenth Circuit explained the rationale for absolute quasi-judicial immunity for law

---

**3.** The Court explained that an official seeking absolute immunity bears the burden of showing this narrowly restricted immunity because qualified immunity is presumed sufficient to protect law enforcement agents engaged in their official responsibilities. *Antoine v. Byers & Anderson,* *Inc.,* — U.S. —, — n. 4, 113 S.Ct. 2167, 2169–70 n. 4, 124 L.Ed.2d 391 (1993). We are disappointed that neither party cited this Supreme Court case, which addresses absolute quasi-judicial immunity.

enforcement officials acting pursuant to court orders:

> Absolute immunity for officials assigned to carry out a judge's orders is necessary to insure that such officials can perform their function without the need to secure permanent legal counsel. A lesser degree of immunity could impair the judicial process.

> . . . .

> Tension between trial judges and those officials responsible for enforcing their orders inevitably would result were there not absolute immunity for both. . . . The public interest demands strict adherence to judicial decrees. . . . Absolute immunity will ensure the public's trust and confidence in courts' ability to completely, effectively and finally adjudicate the controversies before them.

*Valdez*, 878 F.2d at 1288, 1289.

■ Further, that court determined that a narrow definition of facial validity of a judicial order would erode absolute quasi-judicial immunity. *Turney*, 898 F.2d at 1473. " 'Facially valid' does not mean 'lawful.' An erroneous order can be valid." *Id.* (citing *Baker v. McCollan*, 443 U.S. 137, 143–44, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979)). Law enforcement officials "must not be called upon to answer for the legality of decisions which they are powerless to control" or "be required to act as pseudo-appellate courts scrutinizing the orders of judges." *Valdez*, 878 F.2d at 1289. When "we have a writ which is fair on its face, issued from a court which had jurisdiction both of the parties and of the subject-matter of the suit in which it was issued, and which was issued in the regular course of judicial proceeding by that court, and which the officer of the court in whose hands it was placed is bound to obey," the implementing officer is protected in executing the court's mandate. *Matthews v. Densmore*, 109 U.S. 216, 218, 3 S.Ct. 126, 127, 27 L.Ed. 912 (1883). Therefore, law enforcement personnel, acting in furtherance of their official duties and relying on a facially valid court order, are entitled to absolute quasi-judicial immunity from suit in a section 1983 action. *Henry*, 808 F.2d at 1239. We adopt this reasoning in our circuit.[4]

■ Applying this law to the facts before us, the temporary restraining order in this case was issued in an emergency situation by the judge adjudicating the dispute between Roland and her company with certain residents of the Robinwood Subdivision. Hence, the judge was acting in his judicial capacity in a matter over which he had jurisdiction. Deputy Harrell was following the explicit instructions of a written, judicial restraining order when he stopped Roland and ordered her to restore water service to the Robinwood Subdivision, after she and/or her company agents acted in a Grinch-like manner by terminating water service on Christmas Eve. When she refused to do so, Deputy Harrell appropriately determined that Roland was obstructing an officer by preventing him from executing his official duties as judicially ordered. Therefore, Deputy Benjamin correctly charged her with such obstruction, arising from the facially valid, judicial restraining order. *See International Molders and Allied Workers v. Buchanan Lumber Birmingham*, 459 F.Supp. 950, 952 (N.D.Ala. 1978) ("Law enforcement personnel acting under the judge's [temporary restraining] order are entitled to quasi-judicial immunity."), *aff'd mem.*, 618 F.2d 782 (5th Cir.1980).

---

4. Our previous recognition of absolute quasi-judicial immunity has been in contexts where the official in question acted in an analogous judicial capacity rather than pursuant to a judicial order. *See Fuller v. Georgia State Bd. of Pardons & Paroles*, 851 F.2d 1307, 1310 (11th Cir.1988) (per curiam) (individual Parole Board members entitled to absolute quasi-judicial immunity); *Hughes v. Chesser*, 731 F.2d 1489, 1490 (11th Cir.1984) (state probation officers entitled to absolute immunity in preparing presentence reports). The former Fifth Circuit found that court clerks' clerical actions generally are not protected by abso-lute immunity, unless their conduct is ordered by a judge. *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. Unit A June 1981); *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir.1980) (per curiam); *see Antoine*, —— U.S. at ——, 113 S.Ct. at 2171–72 (court reporters are not protected by absolute quasi-judicial immunity in producing trial transcripts). These cases also exemplify instances where careful analysis of the judicial function is necessary to determine if absolute quasi-judicial immunity is applicable. When an official acts pursuant to a direct judicial order, absolute quasi-judicial immunity is obvious.

In subsequent response to a judge's telephonic command to incarcerate Roland after her reiterated refusal to activate water service for the Robinwood Subdivision, Sheriff Phillips was acting under a verbal judicial order. *See King v. Thornburg*, 762 F.Supp. 336, 341–43 (S.D.Ga.1991) (using the Tenth Circuit's rationale in *Valdez*, the district court found that a deputy marshal was protected by absolute quasi-judicial immunity for following a magistrate judge's verbal instruction to take a lawyer into custody for failure to appear for trial). Whether a valid judicial order is verbal or written, an executing law enforcement official is protected by absolute quasi-judicial immunity. *See Valdez*, 878 F.2d at 1286 (involving implementation of a verbal and a written judicial order). "[I]t is simply unfair to spare the judges who give orders while punishing the officers who obey them." [5] *Id.* at 1289. "The proper procedure" for a party who contests a judicial order "is to appeal that order and ... not to sue the official responsible for its execution." *Henry*, 808 F.2d at 1239.

The district court failed to perform any analysis of absolute quasi-judicial immunity, although defendants-appellants cited *Valdez, Henry*, and other cases in support of their affirmative immunity defense. We conclude that defendants-appellants were protected by absolute quasi-judicial immunity because they acted pursuant to valid written and oral judicial orders. Therefore, defendants-appellants' summary judgment motion should have been granted, and the section 1983 action against them dismissed on the basis of absolute quasi-judicial immunity.[6]

### III. CONCLUSION

Roland filed this section 1983 case against defendants-appellants for their actions taken pursuant to valid judicial orders. Defendants-appellants were entitled to summary judgment based on absolute quasi-judicial immunity, and the district court should have dismissed this case. Accordingly, we REVERSE and REMAND with instructions that the district court grant defendants-appellants' summary judgment motion and dismiss this case.

---

**5.** In *Antoine*, the court reporter's failure to produce a trial transcript after "a long series of hearings, court orders, and new filing deadlines" constituted *defiance* of court orders and did not entitle her to the protection of absolute quasi-judicial immunity. —— U.S. at ——, 113 S.Ct. at 2168. In contrast, defendants-appellants' enforcement actions were in *obedience* to court orders and afforded them absolute quasi-judicial immunity.

**6.** Because we have determined that defendants-appellants are entitled to absolute quasi-judicial immunity, their alternative qualified immunity defense is moot. *See Valdez*, 878 F.2d at 1288

(discussing why "qualified immunity for officials following court orders will *not* protect the judicial process by permitting the dismissal of insubstantial claims prior to trial"). To the extent that Roland attempts to allege a state law claim involving false imprisonment against defendants-appellants, pendent jurisdiction should not be exercised in the absence of a viable federal claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").