**Robin Abraham DOLIN, individually and on behalf of N.D., a child, Plaintiffs,**

v.

**David WEST, individually and in his official capacity as Florida Department of Law Enforcement Agent, et al., Defendants.**

**No. 97–757–CIV–ORL–18B.**

United States District Court,
M.D. Florida,
Orlando Division.

Sept. 21, 1998.

---

Thomas L. Edwards, Thomas L. Edwards, P.A., Gainesville, FL, Jeremiah McKenna, Staten Island, NY, Robin Abbie Abraham, Law Office of Robin Abraham, Orlando, FL, Alan D. Rosenfeld, Law Office of Alan D. Rosenfeld, Louisville, CO, for Robin Abraham Dolin, individually and on behalf of N.D., a child, plaintiffs.

Charlann Jackson–Sanders, Henry A. Gill, Jr., Attorney General's Office, Dept. of Legal Affairs, Tampa, FL, R. Barry Morgan, Broussard, Condry & Morgan, Orlando, FL, Hal Uhrig, Maitlan, FL, pro se, Walter A. Ketcham, Jr., Jeanelle G. Bronson, Grower, Ketcham, More', Rutherford, Noecker, Bronson, Siboni & Eide, P.A., Orlando, FL, Philip Dolin, Maitland, FL, pro se, W. Scott Gabrielson, City of Orlando, Office of Legal Affairs, Orlando, FL, David W. Sims, Altamonte Springs, FL, Richards H. Ford, Wicker, Smith, Tutan, O'Hara, McCoy, Graham &

Ford, Orlando, FL, Bruce R. Bogan, Eubanks, Hilyard & Bogan, P.A., Orlando, FL, Reginald D. Hicks, Perry & Hicks, P.A., Orlanda, FL, Richard E. Ramsey, Richards H. Ford, Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, Orlando, FL, Richard Alan Simon, Richard Sidney Womble, Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Orlando, FL, for David West, Dr. Deborah Day, Dr. Matthew Siebel, Hal Uhrig, James Aaron, David Tittsworth, R. James Stroker, Dr. Philip Dolin, Bill Rakes, David W. Sims, Michael Penn, Dr. Ralph Underwager, Syd McCallister, Paul Snead, Ed Feaver, Kevin Beary, Nancy Sutherlin, defendants.

## ORDER GRANTING MOTIONS TO DISMISS

G. KENDALL SHARP, District Judge.

Robin Abraham Dolin ("Ms.Abraham") brings this civil rights action for (1) damages pursuant to 42 U.S.C. §§ 1983, 1988, 13981, (2) injunctive relief under 42 U.S.C. §§ 1983, 1988, (3) declaratory relief under 28 U.S.C. § 2201, and (4) damages under various state law theories. Ms. Abraham alleges that the defendants conspired to terminate Ms. Abraham's contact with her daughter, N.D. Several of the defendants, including Dr. Deborah Day (Doc. # 73), Psychological Affiliates, Inc. (Doc. # 114), Dr. Matthew Siebel (Doc. # 75), Mr. Hal Uhrig (Doc. # 65), Dr. Philip Dolin (Doc. # 64), Dr. Ralph Underwager (Doc. # 99), The Institute for Psychological Therapies, Inc. (Doc. # 99), Orange County Sheriff Kevin Beary (Doc. # 84), and Dr. Nancy Sutherlin (Doc. # 117), move for dismissal, arguing on grounds of immunity and failure to state a claim. The defendant Mr. David Sims (Doc. # 69) also moves for dismissal or, alternatively, for summary judgment. After reviewing the record and the applicable law, the court finds that the defendants' motions should be granted on grounds of immunity and on the merits.

### I. Background

Dr. Philip Dolin and the plaintiff, Robin Abraham Dolin ("Ms.Abraham"), married September 1, 1986 and from that marriage had a child, N.D., born July 6, 1989. Shortly after the child's birth, the couple divorced with Ms. Abraham receiving custody of N.D. (Pls.' V. Am. Compl. ¶¶ 41, 42.)

On July 9, 1993, Ms. Abraham sought relief in state court to suspend Dr. Dolin's visitation rights with N.D., alleging that Dr. Dolin had physically abused Ms. Abraham and sexually abused N.D. Dr. Dolin moved for residential custody of N.D.; arguing that Ms. Abraham's allegations were false and that Ms. Abraham was alienating N.D. from Dr. Dolin. On October 26, 1993 following several days of hearings, Judge Stroker of Florida's Ninth Judicial Circuit awarded residential custody of N.D. to Dr. Dolin. (Pls.' V. Am. Compl. ¶¶ 76, 102, 106.)

The child custody dispute and investigation of child sexual abuse continued for several more years until Dr. Dolin sought to terminate Ms. Abraham's visitation rights in 1997. (Pls.' V. Am. Compl. ¶ 157.) After receiving evidence from court appointed psychologists and the parties, Judge Stroker terminated Ms. Abraham's right to visit with N.D. on July 17, 1997, finding that Ms. Abraham violated the court's previous orders by failing to foster a loving relationship between Dr. Dolin and N.D and that Ms. Abraham suffered from a mental disorder. (Pls.' V. Am. Compl. ¶ 165.) Ms. Abraham then brought the present action alleging that Dr. Dolin sexually abused N.D. and physically abused Ms. Abraham, and that Dr. Dolin, Dr. Dolin's attorney, Judge Stroker, the Orlando Department of Children & Families, the Orange County Sheriff's Office, Orange County Hospital personnel, the Orlando Child Protection Team, and the other defendants all conspired to conceal evidence of the abuse and terminate Ms. Abraham's contact with N.D.

Ms. Abraham makes several allegations to link the defendants as conspirators. Dr. Philip Dolin allegedly conspired with the other defendants by using his authority as an emergency room doctor to cover-up evidence of child sex abuse. (Pls.' V. Am. Compl. ¶¶ 59, 60, 82, 115, 121, 174.) Dr. Dolin's attorney, Mr. Hal Uhrig, allegedly conspired against Ms. Abraham by submitting a fraudulent polygraph report into evidence during the state court proceedings, by stating that Ms. Abraham suffers from a psychological

disorder, and by recommending her arrest. (Pls.' V. Am. Compl. ¶¶ 82, 107, 115, 121, 135, 146, 174, 243.)

Dr. Day and Dr. Sutherlin are alleged conspirators because they served as court appointed psychologists, spoke with the other defendants, provided testimony that Ms. Abraham suffered from "Contemporary Style Munchausen's Syndrome," and recommended termination of contact between Ms. Abraham and N.D. (Pls.' V. Am. Compl. ¶¶ 115, 121, 129, 165, 174.) Dr. Day also recommended Ms. Abraham's arrest. (Pls.' V. Am. Compl. ¶ 94.) Further, Dr. Sutherlin allegedly testified during the state court proceedings that she was a licensed psychologist when in fact she was not. (Pls.' V. Am. Compl. ¶¶ 18, 109, 110, 121, 131.)

Dr. Underwager was retained by Dr. Dolin as an expert psychologist. He spoke with the various parties and provided testimony that Ms. Abraham's contact with N.D. should be terminated because Ms. Abraham suffered from "Contemporary Style Munchausen's Syndrome." (Pls.' V. Am. Compl. ¶¶ 115, 121, 129, 165, 174.)

Psychological Affiliates, Inc. is allegedly part of the conspiracy because Dr. Day is an executive officer of the organization. (Pls.' V. Am. Compl. ¶¶ 7, 8, 234–41.) Similarly, the Institute for Psychological Therapies, Inc. is apparently a conspirator because Dr. Underwager partially owns the Institute. (Pls.' V. Am. Compl. ¶ 5, 6.)

Mr. Sims is an alleged conspirator because, while serving as court appointed guardian ad litem, Mr. Sims allegedly stole Ms. Abraham's property, recommended Dr. Sutherlin to the court as a licensed psychologist when Dr. Sutherlin was not a licensed psychologist, recommended that the court terminate Ms. Abraham's visitation rights, and recommended Ms. Abraham's arrest. (Pls.' V. Am. Compl. ¶ 101, 111, 113, 115, 120, 121, 162, 174.) Dr. Matthew Seibel, the medical director of the Orlando Child Protection Team, allegedly interfered with the investigation of sexual abuse by transferring the investigation from the Gainesville Child Protection Team to Orlando's Child Protection Team and by recommending that N.D.'s pediatrician neither diagnose nor treat N.D. for sex-

ual abuse. (Pls.' V. Am. Compl. ¶¶ 65–67, 74, 75, 77.) Orange County Sheriff Kevin Beary is an alleged conspirator because the Orange County Sheriff's Office allegedly has a custom and policy of obstructing investigations of sexual abuse and domestic violence. (Pls.' V. Am. Compl. ¶¶ 168, 170, 188, 189.)

## II. Legal Discussion

Ms. Abraham brings both federal and state law claims. The federal claims against all of the defendants include a variety of constitutional claims for damages and injunctive relief pursuant to 42 U.S.C. § 1983. Against all the defendants, Ms. Abraham also seeks attorneys fees pursuant to 42 U.S.C. § 1988 and declaratory relief under 28 U.S.C. § 2201. Ms. Abraham brings an additional federal claim against Dr. Dolin pursuant to 42 U.S.C. § 1983. Further, Ms. Abraham sues all of the defendants under two state law theories, including section 415.511 of the Florida Statutes (1997) and the intentional infliction of emotional distress. Moreover, Ms. Abraham sues Dr. Day and Psychological Affiliates, Inc. for malpractice, Mr. Sims for conversion, and Dr. Dolin for battery. In addition to raising claims on her own behalf, Ms. Abraham also raises many of the same claims on behalf of N.D. and raises a separate claim of sexual battery on behalf of N.D. against Dr. Dolin. The claims brought against the defendants Dr. Day, Dr. Sutherlin, Mr. Sims, Sheriff Beary, and Dr. Seibel are brought against them in both their individual and official capacities.

The defendants challenge Ms. Abraham's action on various grounds, including immunity and failure to state a cause of action. After addressing the appropriate standard of review, the court will first discuss the defendants' immunity defenses and then examine the merits of the federal and state claims. Further, the court will consider the claims brought against Psychological Affiliates, Inc. and the Institute for Psychological Therapies, Inc., the claims brought on behalf of N.D., and the claims for attorneys fees, injunctive relief, and declaratory relief.

When reviewing a motion to dismiss, the court must accept the plaintiff's material allegations as true and view the complaint in the

light most favorable to the plaintiff. *See St. Joseph's Hosp., Inc. v. Hospital Corp. of Am.*, 795 F.2d 948, 954 (11th Cir.1986). Dismissal is warranted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Because the defendants enjoy immunity protection and because the complaint fails to state a cause of action, the court dismisses Ms. Abraham's claims against the defendants Dr. Seibel, Dr. Sutherlin, Dr. Day, Sheriff Beary, Dr. Underwager, Mr. Uhrig, and Dr. Dolin.

Because Ms. Abraham and Mr. Sims have had an opportunity to present all material pertinent to a summary judgment motion, the court must treat Mr. Sims' motion to dismiss as a motion for summary judgment under Fed.R.Civ.P. 12(c). Summary judgment is warranted where the moving party shows that there is no genuine issue as to any material fact. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When deciding the motion, the court views all ambiguities and reasonable inferences in a light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Mr. Sims' motion should also be granted on grounds of immunity and on the merits.

## A. Immunity

### 1. Qualified Immunity

Qualified immunity protects a public official sued in the official's individual capacity under § 1983. The defendants Dr. Sutherlin, Dr. Day, Mr. Sims, Dr. Seibel, and Sheriff Beary are each sued in their individual capacity and claim qualified immunity.

■ To establish a qualified immunity defense, a defendant public official must first show that the official was acting within the scope of the official's discretionary authority. *See Rich v. Dollar*, 841 F.2d 1558, 1563–64 (11th Cir.1988). The burden then shifts to the plaintiff to show that the defendant's

conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1992). "Only in exceptional circumstances will government actors have no shield against claims made against them in their official capacities." *Lassiter v. Ala. A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir.1994).

■ Not only were the defendants acting pursuant to their official responsibilities, but also a reasonable person could not find that the defendants' alleged conduct violated clearly established law. The defendants Dr. Sutherlin, Dr. Day, and Mr. Sims merely spoke with each other and the other defendants, formed an opinion about Ms. Abraham, and presented that opinion in court as part of their official duties. Dr. Seibel merely transferred a child sex abuse case to its proper jurisdiction and made recommendations to N.D.'s pediatrician. Sheriff Beary is sued simply based on the allegation that the Sheriff's Office has a custom and policy of misconduct. Simply adding the conclusion that these actions were part of a conspiracy is insufficient to establish that the actions violated established law because the actions are part of each official's ordinary, lawful duties and because the conspiracy allegation is too attenuated. Because a reasonable person could not find that the defendants' actions violate established law, and Ms. Abraham is unable to cite any case law to suggest otherwise, qualified immunity precludes Ms. Abraham's federal claims against the defendants Dr. Day, Dr. Sutherlin, Mr. Sims, Dr. Seibel, and Sheriff Beary, in their individual capacities.

### 2. Absolute Immunity

■ Absolute immunity protects witnesses, court appointed psychologists, and guardians ad litem who are sued in their individual capacities under § 1983. *See Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir.1984) (recognizing witness immunity for psychiatrists, social workers. and guardian ad litems); *Fullman v. Graddick*, 739 F.2d 553, 564 (11th Cir.1984) (recognizing witness immunity for claims under § 1983 arising

from a witness' trial testimony); *Strength,* 854 F.2d at 423–25 (recognizing immunity for pretrial testimony); *Roland v. Phillips,* 19 F.3d 552, 555 (1994) (using a functional approach for quasi-judicial immunity). The alleged conduct of the defendants Dr. Day, Dr. Sutherlin, and Mr. Sims was pursuant to their respective roles as either a court appointed psychologist or guardian ad litem, and they all enjoy absolute immunity from Ms. Abraham's federal claims. Further, the claims against Dr. Underwager arise from his testimony as an expert witness, and thus absolute immunity also protects Dr. Underwager.

### 3. Eleventh Amendment Immunity

 The Eleventh Amendment bars suits brought against state officers in their official capacities where money judgments would be paid from the state treasury. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Department of the Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). Because Mr. Sims, Dr. Sutherlin, Dr. Seibel, and Dr. Day are all state officers, they may not be sued in their official capacities in federal court because, should a judgment be rendered, the state would have to pay the judgment from its treasury.

 Moreover, the Eleventh Amendment bars supplemental jurisdiction over state law claims against state officers. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Consequently, the state law claims against Mr. Sims, Dr. Sutherlin, Dr. Seibel, and Dr. Day are also barred.

### B. Federal Claims

#### 1. Civil Rights Claims

Although immunity bars many of the federal claims, the court will also address the various federal claims on the merits. 42 U.S.C. § 1983 creates a cause of action against state and local officials who violate federal law while acting under color of state law.

 Dr. Dolin, Mr. Uhrig, and Dr. Underwager are not state actors, and thus are not liable under 42 U.S.C. § 1983. A private party acts under color of law if the private party cooperates in joint activity with the state or its agents. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Mr. Uhrig and Dr. Underwager merely worked on behalf of Dr. Dolin to prepare Dr. Dolin's defense in the state child custody proceedings. The additional allegations that Dr. Dolin covered-up evidence, that Mr. Uhrig recommended Ms. Abraham's arrest and submitted false evidence, and that Dr. Dolin, Mr. Uhrig, and Dr. Underwager met with Mr. Sims, Dr. Sutherlin, and Dr. Day to decide that Ms. Abraham suffered from a mental disorder are too weak to support a claim that Dr. Dolin, Mr. Uhrig, and Dr. Underwager cooperated with the state or its agents.

 Even if qualified immunity does not protect any of the defendants and Mr. Uhrig, Dr. Dolin, and Dr. Underwager are state actors not protected by immunity, the allegations in the complaint are too conclusory and weak to state a claim against any of the defendants for the violation of any federal rights. To establish a prima facie case of conspiracy to violate rights protected by § 1983, a plaintiff must show that the defendants reached an understanding to violate the plaintiff's rights. *See Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988), *overruled on other grounds by Whiting v. Traylor,* 85 F.3d 581, 584 n. 4 (11th Cir.1996). To recover against Mr. Beary in his official capacity as the Orange County Sheriff, Ms. Abraham must establish a policy or custom of misconduct. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Further, the plaintiff must plead a § 1983 conspiracy claim with particularity, and simply claiming a conspiracy is not enough. *See Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir.1984).

 As to the defendant Mr. Beary, the allegations in the complaint are insufficient to show that the local government has a policy or custom of misconduct. The incidents alleged merely relate to the conduct of the Orange County Sheriff's Office personnel in the present case, and a single instance of

misconduct is insufficient to show a custom of misconduct. Moreover, Ms. Abraham does not allege any actions taken individually by Sheriff Beary and thus can only establish his liability based on a governmental policy or custom.

■ The claims against the other defendants also fail because Ms. Abraham's conclusory allegations are too weak to show that the defendants reached an understanding to violate Ms. Abraham's rights. Ms. Abraham essentially alleges that the court appointed psychologists and the guardian ad litem performed their duties but did not make recommendations in her favor, that Dr. Underwager and Mr. Uhrig prepared a case in favor of Dr. Dolin, and that Dr. Seibel and Sheriff Beary did not perform their duties to her satisfaction. She then adds the conclusion that these actions were part of a conspiracy. Ms. Abraham's allegations, without more, are insufficient to show an understanding to violate the plaintiff's rights under the First, Fifth, Sixth, Ninth, or Fourteenth Amendments to the Constitution.

■ Further, Ms. Abraham's Eighth Amendment claims fail because Ms. Abraham fails to allege that she was ever punished after a criminal conviction. *See Palermo v. Rorex*, 806 F.2d 1266, 1271 (5th Cir. 1987). Additionally, Ms. Abraham's Fourth Amendment claims fail because Ms. Abraham does not allege an illegal search and seizure.

■ Ms. Abraham also asserts a malicious prosecution claim under § 1983, alleging that Dr. Day, Dr. Sutherlin, Dr. Underwager, Dr. Seibel, Mr. Sims, Mr. Seibel, Dr. Dolin, and Mr. Uhrig recommended Ms. Abraham's arrest for filing false claims of abuse. (Pls.' V. Am. Compl. ¶¶ 216–24.) Because Ms. Abraham does not assert that she was forcibly restrained, Ms. Abraham's Fourth Amendment malicious prosecution claim fails. *See Whiting v. Traylor*, 85 F.3d 581, 584 (11th Cir.1996). To the extent that Ms. Abraham raises a state law claim for malicious prosecution, the claim fails because Ms. Abraham failed to allege that the defendants maliciously caused the commencement or continuance of an original criminal or civil judicial proceeding that lacked probable cause, resulted in favor of Ms. Abraham, and damaged Ms. Abraham. *See Burns v. GCC Beverages, Inc.*, 502 So.2d 1217, 1218 (Fla. 1986).

### 2. Violence Against Women Act

■ Ms. Abraham also brings a claim against Dr. Dolin under the Violence Against Women Act, 42 U.S.C. § 13983. Ms. Abraham's allegation that Dr. Dolin battered Ms. Abraham as part of a gender-based animus is insufficient to state a claim under 42 U.S.C. § 13981 because Ms. Abraham did not allege that the conduct would constitute a felony and because her allegations are too weak to show that the crime was motivated by gender. *See* 42 U.S.C. § 13981(d)(2), (e)(1).

### C. State Claims

#### 1. Statutory Claims and Claims for the Intentional Infliction of Emotional Distress

■ Ms. Abraham raises two state law claims against all of the defendants. Ms. Abraham's claims against the defendants pursuant to section 415.511 of the Florida Statutes (1997) fail because Ms. Abraham does not assert that any of the defendants filed a report that caused a detrimental change in Ms. Abraham's employment status. *See* Fla. Stat. § 415.511(b). Moreover, Ms. Abraham's claims for the intentional infliction of emotional distress fail because the defendants' alleged conduct does not constitute outrageous conduct sufficient to state a cause of action under Florida law. *See, e.g., Ponton v. Scarfone*, 468 So.2d 1009, 1011 (Fla.Dist.Ct.App.1985) (stating the legal standard).

#### 2. Malpractice Claim

■ Ms. Abraham's malpractice claim against Dr. Day and Psychological Affiliates, Inc. fails on grounds of immunity. First, as discussed earlier, the Eleventh Amendment bars supplemental jurisdiction over this claim because Dr. Day is a state officer. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Also, Florida's two-year statute of

limitations bars any malpractice claims against Dr. Day based on conduct prior to June 1995. *See* Fla. Stat. § 95.11(4)(a) (1997). Dr. Day's alleged conduct after June 1995 consisted solely of meeting with N.D. and testifying at a judicial hearing. Because Dr. Day's testimony and conduct was part of her role as a court appointed psychologist, Dr. Day is protected by state law doctrines of qualified judicial immunity so long as she was acting in good faith. *See Boczar v. Glendening,* 555 So.2d 1286 (Fla.Dist.Ct.App. 1990) (holding that a court appointed doctor was immune from a malpractice claim brought in response to the doctor's testimony). Ms Abraham's conclusory allegations are insufficient as a matter of law to establish that Dr. Day was not acting in good faith.

### 3. Battery Claim

■ Ms. Abraham also brings a battery claim against Dr. Dolin. Dr. Dolin allegedly battered Ms. Abraham on several instances, the last of which allegedly occurred on January 22, 1993. (Pls.' V. Am. Compl. ¶ 47.) Florida law provides that an action for battery must be brought within four years. *See* § 95.11(3)(*o*), Fla. Stat. Because the case was brought on June 13, 1997 and the last incidence of violence against Ms. Abraham allegedly occurred on January 22, 1993, the battery claim fails to satisfy the statute of limitations and must be dismissed.

### 4. Conversion Claim

■ Ms. Abraham also brings a conversion claim against Mr. Sims in his individual capacity, alleging that Ms. Abraham gave Mr. Sims keys to a warehouse as part of a barter arrangement for Mr. Sims' guardian ad litem fees and that Mr. Sims used those keys to convert all of Ms. Abraham's property to his own use. (Pls.' V. Am. Compl. ¶¶ 256–61.) Ms. Abraham's conversion claim fails on several grounds. First, as discussed earlier, Mr. Sims is a state officer and the Eleventh Immunity bars supplemental jurisdiction over this claim. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Further, a guardian ad litem under Florida law

is immune from liability unless the guardian ad litem was not acting in good faith. *See* § 61.405, Fla. Stat. (1995). A guardian ad litem is presumed to be acting in good faith. *See id.* While Ms. Abraham alleges that the conversion was in the absence of good faith, the factual allegations are insufficient as a matter of law to overcome the presumption that Mr. Sims was acting in good faith. Therefore, the claim is barred on grounds of state law immunity. Additionally, the complaint fails to specifically identify the property taken and fails to allege how Mr. Sims' conduct was an unauthorized act in light of the barter agreement. Finally, res judicata bars the claim because Ms. Abraham could have raised this issue in state court in defense against Mr. Sims' motion for final assessment of guardian ad litem fees and costs.

### D. Psychological Affiliates and the Institute for Psychological Therapies, Inc.

■ The claims against Psychological Affiliates, Inc. and the Institute for Psychological Therapies, Inc. warrant dismissal. The only allegation against Psychological Affiliates, Inc. is that Dr. Day is an executive officer of the corporation. (Pls.' V. Am. Compl. ¶¶ 7, 8, 234–41.) Similarly, the Institute for Psychological Therapies, Inc. is allegedly liable because Dr. Underwager owns the Institute in part. (Pls.' V. Am. Compl. ¶¶ 5, 6.) Because no allegations suggest that Dr. Day's conduct was on behalf of Psychological Affiliates, Inc. or that Dr. Underwager's conduct was within the scope of Dr. Underwager's duties as owner of the Institute, the complaint fails to state a cause of action against either Psychological Affiliates, Inc. or the Institute for Psychological Therapies, Inc. To the extent that the complaint does state a claim against Psychological Affiliates, Inc. or the Institute for Psychological Therapies, Inc., the claim fails for the same reasons that the claims against Dr. Day and Dr. Underwager fail.

### E. Claims brought on Behalf of N.D.

Most of the claims that Ms. Abraham asserts on her own behalf, Ms. Abraham also asserts on behalf of N.D. Additionally, Ms.

Abraham asserts a sexual battery claim on behalf of N.D. against Dr. Dolin.

Although a parent-guardian may sue on behalf of a minor pursuant to Fed. R.Civ.P. 17(c), a parent may not sue on behalf of a child where the parent's interests are not aligned with those of the child. *See, e.g., Johns v. Dep't of Justice of the United States,* 624 F.2d 522 (5th Cir.1980). Instead, the court must appoint a guardian ad litem or must make "such other order as it deems proper for the protection of the infant." Fed.R.Civ.P. 17(c).

With Ms. Abraham's visitation rights terminated due to allegations that Ms. Abraham suffers from a mental disorder and has failed to foster a loving relationship between N.D. and Dr. Dolin, Ms. Abraham's interests are not aligned with N.D.'s interests, and Ms. Abraham may not sue on behalf of N.D. in the present case. Moreover, the court declines to appoint a guardian ad litem because N.D.'s interests have been adequately protected. Judge Stroker of Florida's Ninth Judicial Circuit already appointed Mr. Sims as guardian ad litem and already litigated the issue of N.D.'s sexual abuse. Although Mr. Sims, as an alleged member of the conspiracy, cannot be expected to raise a conspiracy claim against himself, Ms. Abraham's conspiracy claims have all failed to state a cause of action suggesting that Mr. Sims properly chose not to pursue a conspiracy theory on behalf of N.D. Because the issue of N.D.'s sexual abuse has been litigated and because Ms. Abraham's conspiracy claims have failed to state a cause of action, the court finds that N.D.'s interests have been adequately protected, and the court declines to appoint a new guardian ad litem.

To the extent that Ms. Abraham does have the authority to sue on behalf of N.D., the claims brought on behalf of both N.D. and Ms. Abraham fail for the reasons already discussed in this opinion. The sexual abuse claim brought solely on behalf of N.D. fails on the grounds of collateral estoppel because the parties have already litigated the issue of sexual abuse before Judge Stroker of Florida's Ninth Judicial Circuit. (Pls.' V. Am. Compl. ¶ 102 (stating that Ms. Abraham submitted evidence of sexual abuse during the state court proceedings and thus litigated the issue of sexual abuse).) Contrary to Ms. Abraham's assertions, Judge Stroker's substantive orders regarding custody and termination of visitation rights have not been invalidated. *See Dolin v. Dolin,* 654 So.2d 223 (Fla.App. 5th Dist.1995) (attached to Pls.' V. Am. Compl. as Pls.' Ex. V) (invalidating only the trial court's contempt order); *see also Dolin v. Dolin,* 643 So.2d 1096 (Fla.Dist.Ct. App.1994) (affirming the trial court's change of custody order on the merits).

In summary, Ms. Abraham does not have the authority to sue on behalf of N.D., and because N.D.'s interests have been adequately protected, the court declines to appoint a new guardian ad litem to represent N.D. in this action. To the extent that Ms. Abraham may sue on behalf of N.D., the claims brought on behalf of N.D. fail for the same reasons that Ms. Abraham's claims fail and because of collateral estoppel.

### F. Claims for Attorney's Fees and Injunctive and Declaratory Relief

Because Ms. Abraham's claims have failed on grounds of immunity and on the merits, Ms. Abraham's claim for attorney's fees under 42 U.S.C. § 1988 also fails. *See Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (stating that no recovery exists under 42 U.S.C. § 1988 where the defendant prevails based on immunity or on the merits). For the same reasons, Ms. Abraham's claims for injunctive and declaratory relief also fail.

### III. Conclusion

Not only does immunity protect the defendants, but also Ms. Abraham has failed to state a cause of action on any of the federal or state claims. Moreover, because Ms. Abraham's interests diverge from N.D.'s interests and because N.D.'s interests are adequately protected, Ms. Abraham may not bring a cause of action on behalf of N.D. and the court declines to appoint a new guardian ad litem to represent N.D. Based on the foregoing, the defendants' Motions to Dismiss are **GRANTED** with prejudice.