[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12052
Non-Argument Calendar
_____

D.C. Docket Nos. 7:14-cv-01469-TMP


GENNIE V. BYRD,
LAMOND R. BYRD, SR.,
BRIDGET Y. BYRD,

Plaintiffs-Appellants,

versus

INVESTIGATOR D.A. JONES,
of the Tuscaloosa Police Dept., individually,
INVESTIGATOR DORNELL COUSETTE,
of the Tuscaloosa Police Dept., individually,
CITY OF TUSCALOOSA, ALABAMA,

Defendants-Appellees.
_____
D.C. Docket No. 7:14-cv-01537-TMP


BRIDGET BYRD,

Plaintiff–Counter
Defendant-Appellant,

versus

LEONARA WILLIAMS,
an individual, et al.,

Defendants–Counter
Claimants-Appellees,

ROSINA SMITH,
Magistrate, District Court of City
of Tuscaloosa, an individual, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 22, 2016)

Before ED CARNES, Chief Judge, WILSON and ROSENBAUM, Circuit Judges.

PER CURIAM:

Bridget Byrd, her father Lamond Byrd, and her stepmother, Gennie Byrd, filed lawsuits against Bridget's mother, Bridget's stepfather, several police officers, a state court magistrate judge, and the City of Tuscaloosa, alleging various violations of their civil rights.[1] The district court granted summary judgment to most of the defendants and certified its judgment as final under Federal Rule of Civil Procedure 54(b). This is the plaintiffs' appeal.

I.

In February 2003 the Washtenaw, Michigan probate court appointed Bridget's mother, Lenora Williams, as the guardian of Bridget's daughter, with

_____

[1] For clarity, we will refer to Bridget, Lamond, and Gennie Byrd by their first names because all three share the same last name.

2

Bridget's consent. A little over three years later Williams and the child moved to Tuscaloosa, Alabama, prompting the Washtenaw County probate deputy register to send Williams a letter instructing her that she needed to establish her guardianship over the child in Alabama and that the Michigan guardianship would be administratively closed. There is no evidence in the record showing that Williams established her guardianship in Alabama.

On July 4, 2012, Bridget (who was still residing in Michigan) went to the Tuscaloosa City Police Department and spoke to Dornelle Cousette, an investigator in the department's juvenile division. Bridget told Cousette that she was the legal guardian of her daughter and that Williams had unlawfully refused to return the child to her custody. Bridget gave Cousette a copy of the letter that the Michigan probate court had sent to Williams notifying her that the Michigan guardianship would be administratively closed, because Bridget believed that this letter showed that Williams' guardianship over the child had been terminated. Bridget also gave Cousette a petition for withdrawal of Williams' guardianship that she told him she had recently filed in Tuscaloosa probate court in order to regain custody of the child. Cousette made copies of the letter and the petition, and he told Bridget that she needed to wait for the court to determine the custody issue before law enforcement could take the child from Williams and return her to Bridget. A few days later, Bridget called Cousette. He told her that he had spoken to Williams,

3

who had admitted that Bridget had legal custody of the child but refused to return her.[2]

On August 6, 2012, David Jones, another investigator in the department's juvenile division, received an incident report from an officer about a kidnapping involving Bridget's daughter that had occurred in a restaurant parking lot. The report listed Bridget, Lamond, and Gennie as the kidnapping suspects. The report's narrative statement of the crime noted that Williams, who claimed that she was the child's legal guardian, had agreed to meet Bridget, Lamond, and Gennie at a local restaurant so that they could visit with the child. While Williams and the child were walking into the restaurant, Lamond ran up, grabbed the child, and quickly put her in a car where Bridget and Gennie were waiting. Williams and her husband chased Lamond through the parking lot and they were halfway inside of the vehicle attempting to pull the child out when Bridget began driving the car, dragging them through the parking lot. Eventually Williams and her husband were thrown from the car, and Bridget, Lamond, and Gennie fled to Michigan with the child.

Based on information given in that incident report, along with what Jones refers to as "other information learned by the Juvenile Division," Jones prepared

_____

[2] Cousette denies that this conversation ever took place. At the summary judgment stage, however, we must view the evidence in the light most favorable to the non-moving party. See Morton v. Kirkwood, 707 F.3d 1276, 1279 (11th Cir. 2013). As a result, we accept Bridget's statement that this conversation occurred.

affidavits to submit in order to obtain arrest warrants.  He took those affidavits to Magistrate Judge Rosenia Smith, who reviewed them and concluded that there was probable cause to support Bridget, Lamond, and Gennie's arrest for interference with the custody of a child.  Smith issued warrants for their arrests.  Bridget was arrested in Michigan based on the warrant against her and was held in the Washtenaw County jail for ten days, at which point the charges against her were withdrawn.  Lamond and Gennie turned themselves in, and eventually the charges against them were dropped as well.  Neither Jones nor Cousette was involved in executing those arrest warrants.

## II.

Bridget filed a lawsuit against Williams, Williams' husband, Smith, Jones, Cousette, and the city of Tuscaloosa.[3]  Bridget asserted 42 U.S.C. § 1983 and § 1985 claims against Smith, Cousette, Jones, and the City alleging false arrest, false imprisonment, and malicious prosecution.  She also claimed that the defendants violated her First Amendment right to freely associate and her Fourteenth Amendment rights to due process and equal protection related to the custody and care of her child.  She also brought certain state law claims against the defendants.  In a separate action, Lamond and Gennie brought § 1983 claims against Jones, Cousette, and the City alleging false imprisonment, false arrest, and

---

[3] Bridget's claims against Williams and her husband are not part of this appeal, so we do not address them.

malicious prosecution.  The district court consolidated the two actions at the defendants' request.

Jones, Cousette, and the City filed a motion for summary judgment, which Smith later joined, on all of the claims asserted against them in both actions.  The plaintiffs opposed that motion and filed a motion to strike Jones' and Cousette's affidavits, which had been submitted in support of their motion for summary judgment.  The district court denied that motion to strike and granted summary judgment in favor of the defendants.  This is the plaintiffs' appeal of both the denial of the motion to strike and the grant of summary judgment.

### III.

### A.

Bridget, Lamond, and Gennie contend that the district court erred in denying the motion to strike Jones' and Cousette's affidavits.  They mention Federal Rule of Civil Procedure 56(c) and assert that an affidavit must contain firsthand knowledge.  They argue, in effect, that before the officers attested to the statements in the affidavits, they were required to research official court records and make a legal determination about whether Williams had lawful custody of Bridget's child. Because no authority imposes that requirement, their argument fails.  And while they argued to the district court that the affidavits contained hearsay, they have abandoned that argument on appeal.  See Sapuppo v. Allstate Floridian Ins. Co.,

739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

### B.

Applying the doctrine of judicial immunity, the district court granted summary judgment to Magistrate Judge Smith on Bridget's § 1983 claims alleging false arrest, false imprisonment, malicious prosecution, and violations of her First, Eighth, and Fourteenth Amendment rights.[4]  The court concluded that Judge Smith was also entitled to summary judgment on Bridget's 42 U.S.C. § 1985(3) claims alleging conspiracy to deprive her of her rights and immunities under law, including the rights to:  freely associate, be free from cruel and unusual punishment, travel interstate, be free from unlawful searches and seizures, and to have equal protection and due process.

Judge Smith has judicial immunity from Bridget's claims because "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Stump v. Sparkman, 435 U.S. 349, 355–56, 98 S. Ct. 1099, 1104 (1978) (quotation marks omitted).  While there are

---

[4] Bridget claims that Judge Smith violated her First Amendment right to freedom of association, her Eighth Amendment right to be free from cruel and unusual punishment, and her Fourteenth Amendment rights to due process and equal protection based on an alleged infringement on her parental rights.

two exceptions to the doctrine of judicial immunity — nonjudicial actions and actions taken in the total absence of all jurisdiction, see Mireles v. Waco, 502 U.S. 9, 11–12, 112 S. Ct. 286, 288 (1991) — Bridget does not argue (and could not plausibly argue) that either of those exceptions applies. The district court's grant of summary judgment to Judge Smith was proper.

## C.

We now turn to the plaintiffs' § 1983 claims against Cousette and Jones for malicious prosecution. To prevail on a malicious prosecution claim under § 1983, a plaintiff must prove, among other things, (1) "a criminal prosecution instituted or continued by the present defendant"; (2) "with malice and without probable cause"; (3) "that terminated in the plaintiff accused's favor"; and (4) that "caused damage to the plaintiff accused." Wood v. Kesler, 323 F.3d 872, 881–82 (11th Cir. 2003).

The plaintiffs offer no evidence at all showing that Cousette instituted or continued their prosecution. As a result, their claims against him for malicious prosecution fail. As for Jones, he is entitled to qualified immunity. To the extent the plaintiffs contend that their arrests were not supported by probable cause, a defendant officer "whose request for a warrant allegedly caused an unconstitutional arrest" is entitled to qualified immunity unless "a reasonably well-trained officer in the [defendant officer's] position would have known that his

8

affidavit failed to establish probable cause and that he should not have applied for the [arrest] warrant." Malley v. Briggs, 475 U.S. 335, 344–45, 106 S. Ct. 1092, 1098 (1986). And "[p]robable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009) (quotation marks omitted).

At the time he requested the arrest warrants, Jones had the following information: A police officer had responded to a reported kidnapping and had filled out a report stating that during a scheduled visitation Lamond had grabbed the child and placed her in a car where Bridget and Gennie were waiting for him. According to the report, Bridget sped away in the car while Williams was trying to remove the child from it. The report stated that Williams claimed to have legal custody of the child. Jones stated that he had "other information learned by the Juvenile Division." The Juvenile Division had the documents that Cousette had copied when he first met Bridget (the letter stating that the Michigan guardianship would be administratively closed and Bridget's Alabama petition to withdraw Williams' guardianship). Those documents did not definitively show who had legal custody of the child. In fact, Bridget's Alabama petition to withdraw Williams' custody indicated that Bridget was seeking custody over the child, not

that she had custody.  If she already had lawful custody of the child, there would have been no point in her filing the petition.

Under Alabama law the crime of interference with the custody of a child is committed when a person knowingly takes "[a]ny child under the age of 18 from the lawful custody of its parent, guardian or other lawful custodian," except "if the actor's sole purpose is to assume lawful control of the child."  Ala. Code 1975 § 13A-6-45.  At the time he obtained the arrest warrant, Jones had probable cause to believe that Williams, not Bridget, had lawful custody of the child.  See Dahl v. Holley, 312 F.3d 1228, 1234 (11th Cir. 2002) ("[A]rresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed.  Nor does probable cause require certainty on the part of the police.").  As a result, Jones, as well as Cousette, was entitled to summary judgment on the plaintiffs' malicious prosecution claims.  The district court did not err in granting it to both of them.

D.

The plaintiffs also brought false arrest and false imprisonment claims against Jones and Cousette.  To the extent that Jones and Cousette were involved in effecting the plaintiffs' arrest after Judge Smith issued the arrest warrants, "law enforcement personnel, acting in furtherance of their official duties and relying on

10

a facially valid court order, are entitled to absolute quasi-judicial immunity from suit in a section 1983 action." Roland v. Phillips, 19 F.3d 552, 556 (11th Cir. 1994). Arrest warrants are valid on their face when "the affidavits attached to the warrants provided probable cause to believe that [the suspect] has committed the offenses charged." Pickens v. Hollowell, 59 F.3d 1203, 1206 (11th Cir. 1995). The arrest warrants here were facially valid because the affidavits attached to them provided probable cause to believe that the plaintiffs had committed the crime. As for executing the arrest warrants, because Jones and Cousette were entitled to quasi-judicial immunity for the actions, if any, that they took in that regard, the district court did not err in granting summary judgment on the plaintiffs' false arrest and false imprisonment claims.[5]

## E.

Bridget also contends that the district court erred in granting summary judgment to Cousette and Jones on her claim for interference with her right of association (with her child) and her fundamental right as a parent to the custody of her child. She fails, however, to offer any evidence that Cousette and Jones acted

---

[5] The plaintiffs also appeal the entry of summary judgment to the City of Tuscaloosa on their claims. They have presented no evidence of any policy, custom, or practice and as a result the district court did not err in granting summary judgment to the City. See Church v. City of Huntsville, 30 F.3d 1332, 1343 (11th Cir. 1994) ("[M]unicipal liability may be based upon (1) an action taken or policy made by an official responsible for making final policy in that area of the city's business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent adopted by the final policymaker.").

in a manner that interfered with her rights as they existed at the time of their conduct.  And to the extent that they participated in executing her arrest warrant in a manner that allegedly interfered with those rights, Cousette and Jones are entitled to quasi-judicial immunity as we have already discussed.  The district court did not err in granting summary judgment on Bridget's interference with associational and parental rights claim.[6]

     **AFFIRMED.**

---

[6] Bridget failed to brief the merits of her state law claims and has abandoned them. See Sappuppo, 739 F.3d at 681.