Carolyn **NICHOLSON**, Plaintiff,

v.

Ben **MOATES**, et al., Defendants.

No. Civ.A. 00A861S.

United States District Court,
M.D. Alabama,
Southern Division.

Sept. 5, 2001.

Joseph (Jay) Brady Lewis, Law Offices of Jay Lewis, Montgomery, AL, for Plaintiff.

Bart Gregory Harmon, Daryl L. Masters, Kelly G. Davidson, Webb & Eley, P.C., Montgomery, AL, Jackson W. Stokes, Stokes & Morrow, Elba, AL, C. Winston Sheehan, Jr., Emily C. Marks, Ball, Ball, Matthews & Novack, P.A., Montgomery, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on a Motion for Summary Judgment (Doc. # 56) filed by Defendant Robert Caswell ("Caswell"); a Motion for Summary Judgment (Doc. # 58) filed by Defendant Claude R. Nicholson ("Ronnie Nicholson"); a Motion for Summary Judgment (Doc. # 60) filed by Defendants Ben Moates ("Moates"), Rex Killingsworth ("Killingsworth"), Jack Herbert ("Herbert"), Henry Petty ("Petty"), and Myron Williams ("Williams") ("collectively the County Defendants").

The Plaintiff, Carolyn Nicholson ("Carolyn Nicholson" or "Plaintiff"), originally filed her Complaint in this case on June 30, 2000. On September 7, 2000, the Plaintiff filed a First Amended Complaint.

In response to Motions to Dismiss filed by the Defendants, the court dismissed portions of the Plaintiff's claims. The Plaintiff filed a Second Amended Complaint in December, 2000. In the Second Amended Complaint she brought claims for unlawful seizure under the Fourth and Fourteenth Amendments to the United States Constitution (Count I), for procedural due process (Count II), for conversion (Count III), and assault and battery (Count IV). On February 8, 2001, the court granted a partial motion to dismiss the procedural due process claim.

The case is now proceeding against the County Defendants, Caswell, and Ronnie Nicholson on the unreasonable seizure claim, and against Caswell and Ronnie Nicholson on a conversion claim, and Ronnie Nicholson on an assault and battery claim.

## II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323,

106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. *FACTS*

The submissions of the parties reveal the following facts, construed in a light most favorable to the non-movant:

The Plaintiff was, at the time relevant to the facts of this case, married to Ronnie Nicholson. The Nicholsons are now di-

vorced. Defendant Ben Moates ("Moates") is the Sheriff of Coffee County, Alabama and has been sued in his official capacity for injunctive relief, and in his individual capacity. Defendants Rex Killingsworth ("Killingsworth"), Jack Herbert ("Herbert"), Henry Petty ("Petty"), and Myron Williams ("Williams") are Deputy Sheriffs of Coffee County, Alabama who have been sued in their individual capacities.

The Plaintiff alleges that during her marriage to Ronnie Nicholson she sought intervention from law enforcement officials to provide physical protection from abuse or threats of abuse by Ronnie Nicholson. Judge Robert Barr granted her petition in October 1997.

In October of 1997, Ronnie Nicholson filed a Divorce Petition in the Circuit Court of Coffee, County, Alabama. The divorce proceeding was before Judge Thomas Head.

In June of 1998, Ronnie Nicholson filed a motion in the protection from abuse case pending before Judge Barr and asked to be allowed to enter his home in Enterprise, Alabama and obtain a numbered list of property. Plaintiff's Exhibit 10. The motion was denied by Judge Barr, and Judge Barr stated that, as he had earlier indicated, the motion was more properly filed in the divorce case. Plaintiff's Exhibit 11. Judge Barr ordered that the protection from abuse case be consolidated with the divorce case. Id.

After Judge Barr denied the motion for return of property which had been filed in the protection from abuse case, and had consolidated the protection from abuse case and divorce case, Judge Head granted a motion in the divorce case. Judge Head has testified that "in some manner Mr. Stokes [Ronnie Nicholson's attorney], without he and I ever speaking directly about it, Mr. Stokes contacted my office on several occasions saying he had a motion pending and that would I please address it. And I checked the divorce file several times." Judge Head Deposition, page 66. Judge Head never looked at the motion. Id. at page 50:4–5. Judge Head signed an order which stated that the motion filed in the protection order case was granted. Plaintiff's Exhibit 13.

Ronnie Nicholson took Judge Head's order along with a copy of a motion which was not stamped as having been filed, Plaintiff's Exhibit 13, to the sheriff's department. Ronnie Nicholson Deposition, pages 54–56. Nicholson has stated that he got the order and motion from Stokes and that they were attached. Id. Although Moates received the order and motion, he does not recall being aware that Ronnie Nicholson had brought the order and motion to the sheriff's department. Moates and the deputies recognize that the order signed by Judge Head does not state that a sheriff deputy was to accompany Ronnie Nicholson to obtain property, but Moates has stated that they knew they were authorized to do so because the separate motion requested that a sheriff deputy accompany Ronnie Nicholson. Moates Deposition, page 16:16–23.

Moates states that after reviewing the order he attempted to contact the attorney for the Carolyn Nicholson in the divorce matter, but that the attorney was involved in a trial and asked that the matter be delayed a few days. Id. at page 19: 1–2. Moates further states that he spoke with the assistant for the attorney for the Carolyn Nicholson who was not sure if the attorney had contacted Carolyn Nicholson or not, but the assistant stated that he

would "just have to do whatever you have to do," which he understood to mean that it was up to the sheriff's department to fulfill its duties according to the motion and order. *Id.* at pages 19–20. Moates states that he does not recall speaking to Ronnie Nicholson regarding the order. Moates Deposition, page 16. Moates directed deputy sheriff Williams to carry out the order.

Williams first saw the order with the attached motion when he found it lying on his desk. Williams Deposition pages 17–18. Williams assigned Killingsworth and Petty to carry out the order. He further instructed them to obtain a locksmith, pursuant to Moates' instructions, if it were necessary to carry out the order. Williams Deposition, pages 13–14.

When Killingsworth and Petty arrived at the Plaintiff's home, the Plaintiff refused to allow the Defendants into her residence and called Coffee County Constable Michael Nowicki ("Nowicki"). Nowicki came to the residence accompanied by two of the Plaintiff's co-workers, Nowicki's wife and another woman. When Carolyn Nicholson let Nowicki into the house, "everybody else plowed in behind him." Diane Nowicki Deposition, page 15. The Plaintiff further states that Killingsworth allowed Ronnie Nicholson to enter the residence, followed by Herbert, Williams, and Petty. Nowicki, however, testifies that Herbert and Williams were not present at the residence until over one hour after the effort to obtain the property had begun. Nowicki Deposition, pages 40–41. Ronnie Nicholson had brought movers to remove the property and Nowicki states that he saw no sheriff's department deputy remove any item from the home. *Id.* at page 41. The Plaintiff states that Killingsworth removed a printer, but that he brought it back.

While the property was being obtained, the Plaintiff called the Enterprise Police Department and asked that Ronnie Nicholson be arrested. Robert Caswell ("Caswell") responded to the call. When he arrived on the scene, he was informed that the County Defendants had a court order to remove property. Caswell took Ronnie Nicholson into custody, without handcuffing him, after the property had been obtained. According to the Plaintiff's evidence, Caswell and Ronnie Nicholson were laughing as the car pulled away.

It is based on the facts surrounding the removal of the property that the Plaintiff brings her federal claims and her conversion claim. The Plaintiff's assault and battery claim is based on the abuse pursuant to which she obtained the protection order.

## IV. DISCUSSION

As stated above, separate Motions for Summary Judgment have been filed by Ronnie Nicholson, Caswell, and the County Defendants. The court will address the grounds for summary judgment raised in the motions as they relate to each claim.

### A. Federal Claim [1]

■ The Plaintiff's federal claim against all of the Defendants in this case is for an unlawful seizure under the Fourth Amend-

---

1. The parties have not raised the issue of the application of the *Rooker Feldman* doctrine in this case. It appears to the court that the doctrine would apply and would deprive this court of subject matter jurisdiction over at least some aspects of the Plaintiff's federal claim. *See Goodman v. Sipos,* 259 F.3d 1327 (11th Cir.2001). Because the issue has not been raised by the parties, however, and because not every aspect of the Plaintiff's federal claim would fall within the operation of the doctrine, specifically the aspect of her claim

ment to the United States Constitution. Only those seizures which are unreasonable are unlawful. *See U.S. v. Gordon*, 231 F.3d 750, 754 (11th Cir.2000). Reasonableness is determined by the circumstances surrounding the seizure and the nature of the seizure itself. *Id.*

The County Defendants argue that the seizure of the Plaintiff's property was reasonable as a matter of law because they were acting pursuant to a court order and there is no evidence that the seizure was carried out in an unreasonable manner. The County Defendants also move for summary judgment on the basis of qualified immunity and quasi-judicial immunity.

■■■ The court will first address the issue of quasi-judicial immunity. Law enforcement officials executing a facially valid court order are protected by absolute quasi-judicial immunity. *Roland v. Phillips*, 19 F.3d 552 (11th Cir.1994). The rationale is that officials assigned to carry out judge's orders can perform their function without the need to secure permanent legal counsel. *Id.* at 556. When there is an order which is "fair on its face," issued by a court which has jurisdiction of both parties and subject matter of the suit, issued in the regular course of judicial proceedings by that court, and which the officer of the court in whose hands it was placed is bound to obey, the implementing officer is protected in executing the court's mandate. *Id.* Entitlement to quasi-judicial immunity must be proven by the person claiming the immunity.

The County Defendants have argued that since it is undisputed that they acted pursuant to a judicial order, they are enti-

tled to quasi-judicial immunity. The County Defendants have pointed to the testimony of Moates wherein he testified that they verified the validity of orders by making sure that they are signed by one of the three judges in their jurisdiction. Moates Deposition at page 36:7–10. He further stated that he considered that the order which is at issue in this case to be a valid order out of the Circuit Court of Coffee County, Enterprise, Alabama. Moates Deposition, page 37: 12–14. It is not disputed that Judge Head signed the order in question.

The Plaintiff's argument in response to the invocation of quasi-judicial immunity is essentially that the order was not facially valid. The Plaintiff advances several arguments in support of this contention. One of the Plaintiff's arguments is that there were conflicting orders, a protection order which prohibited Ronnie Nicholson from entering the Plaintiff's residence and which the Plaintiff contends awarded her an Oldsmobile Aurora, and Judge Head's order which allowed Ronnie Nicholson to enter the premises.

■■■ With respect to the argument that Judge Head's order conflicted with the protection order, the court cannot conclude that such a conflict renders the seizure order facially invalid. " 'Facially valid' does not mean 'lawful.' An erroneous order can be valid." *Roland*, 19 F.3d at 556. Therefore, even if the order is in conflict with another order, the order, on its face, allows for Ronnie Nicholson to enter the marital residence and to recover property, and is, therefore, facially valid. *See* Plaintiff's Exhibit 13.

The Plaintiff has also alleged that the order issued by the state circuit court, on

---

that challenges the actions of the defendants on the premises of her home, the court has

considered the merits of the Plaintiff's claims.

its face, gave no authority for the County Defendants, either Moates or his subordinates, to act. According to the Plaintiff, enforcement of the order could only occur upon agreement of the counsel for the parties to the divorce action. The Plaintiff states that no writ was issued by the court directing removal of the belongings. The Plaintiff also argues that the order itself was altered by the Defendants after it was issued by the attachment of the motion which specified certain property to be removed, including an Oldsmobile Aurora.

The difficult issue presented by this case is that the order signed by the state circuit court judge does not specify any property items to be recovered by Ronnie Nicholson, nor does the order itself authorize any representative of the sheriff's department to accompany Ronnie Nicholson to the home to recover property from the Plaintiff. The authorization for the sheriff's department to accompany Ronnie Nicholson and the items of property to be removed are only apparent when the order is construed *in pari materia* with the motion which was attached to the order. The order itself provides that:

> Counsel for Plaintiff has directed the Court's attention to a pending motion wherein Plaintiff seeks to recover certain items of personal property from the marital residence pendente lite. The undersigned has been unable to determine that such a motion was filed in this action, however, a motion of like kind was filed in Case No. CV–97–235 (i.e. petition for protection from abuse). By order entered on June 4, 1998, Circuit Judge Robert W. Barr, to whom said latter case is assigned, denied the motion and opined, *"the motion is more correctly filed in the divorce case."* Judge Barr further ordered that *"this case (CV–97–235) is ordered consolidated with Case No. DR–97–203 in the Enterprise Division of Coffee County, Alabama."* The undersigned determining therefrom that Judge Barr intended in effect that said motion should be disposed of herein, and the Court having duly considered and understood the same, it is;

> THEREFORE, ORDERED AND ADJUDGED that said motion is granted and the Plaintiff is allowed permission to entered the marital residence and recover specified items of personalty. In so doing, the Plaintiff shall not transfer, conceal, convey or otherwise dispose of any property which constitutes marital res. Plaintiff's attorney is to contact Defendant's attorney and determine a date within the next five calendar days when this order may be executed.

Plaintiff's Exhibit 12 (italics in the original). The motion then asks permission for a sheriff's deputy to accompany Ronnie Nicholson and lists nine items of property to be obtained.

Upon review of the motion and the order, it appears to the court that they are facially valid. The order states that Judge Head is considering a motion to have been filed in the case before him which had been filed in case number 97–235. He refers to an order dated June 4, 1998 in the protection from abuse case. The order states that the "motion is granted" and specifically states that the Plaintiff, Ronnie Nicholson, is allowed to enter the marital residence and recover specified items of property. Plaintiff's Exhibit 13. The style of the case on the motion which accompanied the order is *Carolyn Nicholson v. Claude R. Nicholson,* and the motion bears the case number 97–235. The certificate of service of the motion is dated

June 1, 1998. The body of that motion is clearly a request to obtain property. The order is clearly referring to the copy of the motion which accompanied it.

Of course, the motion which accompanied the order is not stamped as having been filed in the clerk's office. The court cannot find, however, that this fact is dispositive in this case. The motion which was filed did not differ from the copy which accompanied the order. In fact, the motion which undisputedly was filed in the protection order case, case number 97–235, is substantially identical to the motion which accompanied Judge Head's order, the only difference being the absence of the clerk's office stamp. *See* Plaintiff's Exhibit 10. Despite this facial validity, however, the Plaintiff has advanced two separate arguments: first, the Plaintiff says that the order was obtained by Ronnie Nicholson, through his attorney, Jackson Stokes, by perpetrating a fraud on the court; and second, although the Plaintiff recognizes that the purported fraud on the court could not be attributed to the sheriff's department, the Plaintiff states that the order as presented to the sheriff's department was not facially valid because there was no indication that the order referred to the motion which accompanied it. The court will address the latter of these two arguments first.

The Plaintiff argues that the order signed by Judge Head was not facially valid because it simply authorizes Ronnie Nicholson to get some undefined property and directs the lawyers for Ronnie Nichol-

son and the Plaintiff in this case to determine when Ronnie Nicholson might retrieve the property. The Plaintiff argues that the attached motion bore no indicia of reliability and that a reasonable police officer had an obligation to do at least some cursory checking to make sure that the motion which was attached to the order was the motion that was actually granted by the order.

The County Defendants have provided evidence that it is the policy of clerk's office to attach necessary or critical documents to any Order of the court. *See* Affidavit of Karlene Tharmpe. The Plaintiff, however, points to several pieces of evidence to establish that the normal indicia that the order with the attached motion was forwarded to the sheriff's office by the clerk's office are absent, and that Ronnie Nicholson has testified that he delivered the order to the sheriff's office. Ronnie Nicholson testified that he took the order to the sheriff's office, that the motion was attached to the order, that he did not know where he got the motion, but that he had to have gotten it from his attorney, Stokes. Ronnie Nicholson Deposition, page 56. There is at least a question of fact, therefore, which cannot be resolved at the summary judgment stage, as to whether the sheriff's office received the order and attached motion from Ronnie Nicholson. While this is a factual question, it only precludes summary judgment if it is a material question of fact, so the court will analyze the case assuming that Ronnie Nicholson delivered the motion and order.[2]

Assuming that the order and attached motion were delivered by Ronnie Nichol-

---

**2.** Although this is the inference the Plaintiff would have the court draw, it is somewhat difficult to discern whether this inference is in favor of the Plaintiff or not. The Plaintiff has relied on Ronnie Nicholson's testimony to establish that he delivered the motion and order to the sheriff's department. Ronnie Nichol-

son also testified, however, that he presented the order with the motion attached to it. If the order and motion reviewed by Moates were not attached, they would have come from another source, which could have included the clerk's office. Since the Plaintiff

son, rather than sent to the sheriff's office by the court, the County Defendants argue that they were entitled to rely upon an order which refers to a motion and a motion attached to that order as being a valid order of the court. The Plaintiff, on the other hand, while at times assuming that the motion was attached to the order, also states that there is a conflict in Moates' testimony as to whether the order was attached to the motion at the time he received it.

The court first notes that there is apparently no dispute that at the time all of the other County Defendants, that is the sheriff's deputies involved in this case, received the order in question, the motion was attached to it. Moates' testimony on the issue of whether the motion was attached to the order when he received it is somewhat equivocal. When he was first asked that question in his deposition, he stated that he thinks it probably was, but could not be sure. Moates Deposition, page 15. In the same discussion, however, when asked whether upon reading the order he noticed that it did not direct the sheriff's department to take any action, he stated that while the order itself does not tell the sheriff's department what to do, "what would have caught my attention would have been the separate page." *Id.* at 16. Later, Moates clarifies that when he had been earlier asked about the attachment of the motion, that they would not have acted if the motion had not been attached. *Id.* page 26. Moates' testimony is not so much in conflict as it is equivocal and then clarified. Moates first said he could not be sure that the motion was attached, but then said that it had to have been. It is clear from his testimony, especially the

reference to the "separate page," however, that when he reviewed the order, he also had a copy of the motion. For purposes of summary judgment, therefore, the court will assume that Moates had a copy of the order and a copy of the motion, but the motion was not attached to the order.

Ronnie Nicholson states that he delivered the attached motion and order to the sheriff's department. Ronnie Nicholson Deposition at pages 55–56. Ronnie Nicholson does not state to whom at the sheriff's department he delivered the order and attached motion. Moates testifies that he does not recall having any contact with Ronnie Nicholson with regard to the order, and although Ronnie Nicholson has been in their office a number of times, he cannot say that he remembers contacting Ronnie Nicholson about this matter. Moates Deposition, page 16. Moates also said that he does not recall being aware of any visit Ronnie Nicholson made to the office between June 23rd and July 2nd, that is, between the date the order was entered and the date that the property was seized, and he could not recall whether anyone told him that Ronnie Nicholson had been to the office. Moates Deposition, page 24.

The significant fact for purposes of evaluating the Plaintiff's argument is that there is no evidence before the court that Moates was aware that an order and motion had been delivered by Ronnie Nicholson. Therefore, after resolving all fact issues in favor of the Plaintiff, the court determines for purposes of the Motion for Summary Judgment that Moates received an order which referred to a motion and a motion from a source unknown to Moates and that he determined that the order had been signed by one of the judges in the jurisdiction.

seeks to rely on the inference that Ronnie Nicholson delivered the motion and order,

however, the court will assume that fact for analytical purposes.

The Plaintiff has argued that Moates had to do more than verify the validity of the order, and that it was incumbent upon Moates to verify the validity of the motion. The Plaintiff has pointed out that Ronnie Nicholson had previously tried to execute on an invalid order. The Plaintiff argues that Moates knew of this attempt and so should have been on notice that an order brought to the sheriff's department by Ronnie Nicholson might not be valid. Whether or not the Plaintiff could prevail on this argument if the evidence supported this argument is not an issue this court will have to decide, because the evidence cited to the court does not support this argument. First, the court has been cited to no evidence that Moates was aware that Ronnie Nicholson had attempted to execute an invalid order. The evidence cited by the Plaintiff is that Ronnie Nicholson presented the order to Herbert and that Herbert was the only deputy in the office at that time. Herbert Deposition, page 9:4–5. Further, Herbert never testified that he knew the order was invalid. He stated that he contacted Carolyn Nicholson, that she told him the order had been set aside, that he noticed the order was several months old and told Ronnie Nicholson he would have to get a more recent order. *Id.* at page 10:4–5. Herbert in fact testified that he did not determine that the order was invalid, but gave it back to Ronnie Nicholson because the date or the order was older than what he "would like to have dealt with." *Id.* at page 12: 6–8. Second, Moates testified that he does not recall Ronnie Nicholson presenting him with the order and motion at issue in this case. The court must conclude, therefore, that this evidence does not establish that Moates should have been alerted to possible invalidity of an order by Ronnie Nicholson's previous attempt to execute an invalid order.

The Plaintiff also insinuates that the County Defendants were willing to accommodate Ronnie Nicholson even in the absence of a judicial order because they were friends with Ronnie Nicholson. The Plaintiff states that both Moates and Killingsworth admitted that Ronnie Nicholson came to the sheriff's office, although both Moates and Killingsworth said that they thought Ronnie Nicholson was getting a pistol license. The Plaintiff argues that Moates and Killingsworth are lying in this regard, because Ronnie Nicholson does not own a pistol. The Plaintiff also states that Moates and Ronnie Nicholson are both farmers and members of the same organizations, that Moates is a Democratic office holder and Stokes was the party chairman, that the Sheriff's secretary's sister is married to Ronnie Nicholson's brother, and that Killingsworth and Ronnie Nicholson met twenty years prior to the incident at issue.

■ The County Defendants present Moates' testimony that he had no more of a relationship with Ronnie Nicholson than he would have had with any other farmer who would have been in the farming organizations and present evidence that the Plaintiff and Moates belonged to the same church. The County Defendants also point out that the Plaintiff's attorney during the divorce proceedings was the Democratic chairman during Moates' second election. Moates Deposition, page 22. As to Killingsworth meeting Ronnie Nicholson twenty years prior, both men have stated that they had no business or social relationship since that time. Ronnie Nicholson Deposition page 27: 6; Killingsworth Deposition, page 7: 23. There is also no evidence to support a contention that Moates and Killingsworth knew that Ronnie Nicholson did not own a pistol. When

both Defendants referred to the pistol permit, they testified that they "believe," Killingsworth Deposition at page 8:8, Moates Deposition at page 16: 9, not that they knew for a fact, that he was there to renew a pistol license.[3] The court must agree with the County Defendants, that considering all of the evidence together, the inference the Plaintiff seeks to draw from her evidence as to an improper motive by the County Defendants is unreasonable. Furthermore, in the absence of evidence that Moates knew the order and motion had been delivered to the sheriff's department by Ronnie Nicholson, this evidence would not make Moates' actions unreasonable.

The Plaintiff has also argued, with no evidentiary support, that the order was invalid because Jackson Stokes represented to Judge Head contents of the motion and that his representations were inconsistent with the substance of the written motion he subsequently attached to Judge Head's order. The Plaintiff has argued that the officers should have verified that the order intended to grant the attached motion. A verification of the court file would have revealed that Judge Head was referring to the same motion as the unfiled motion which was attached. Plaintiff's Exhibit 10 is a motion filed on June 5, 1998 in case 97–235 which Judge Barr denied and stated should have been filed in the divorce case. See Plaintiff's Exhibit 11. The motion attached to the order, Plaintiff's Exhibit 13, is identical to the motion in Exhibit 10, except that it is not stamped filed. Although Moates did not verify that the motion was in fact the same as the motion granted, the substance of the filed

motion and unfiled copy is identical. In other words, the order actually refers to the motion that accompanied it, whether Judge Head realized that that was the motion he had granted or not. Accordingly, the order and incorporated motion are facially valid. The court must conclude, therefore, the sheriff's and the deputies' actions in accompanying Ronnie Nicholson to obtain property are protected by quasi-judicial immunity.

 Even if Moates' actions, and the resulting accompanying of Ronnie Nicholson by the sheriff's deputies, were not protected by quasi-judicial immunity, they would be protected by qualified immunity. Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir.1991). An official is entitled to qualified immunity if he is performing discretionary functions and his actions do " 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1424 (11th Cir.1997). "For qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel (not just suggest or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1150 (11th Cir.1994). When qualified immunity is asserted as a defense, a court must first determine whether the violation of a constitutional right is asserted, then deter-

---

**3.** Even if Moates and Killingsworth knew that Ronnie Nicholson did not come to the sheriff's department to renew a pistol license, the inference the Plaintiff seeks to draw that they were acting without legal authorization based on a friendship with Ronnie Nicholson is still too great an inference to be considered reasonable.

mine whether that right was clearly established. *See Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

The Plaintiff contends that Moates should have checked with Judge Head to find out what he intended with his order. The order says that the motion is granted. The motion is very specific as to the items of property to be obtained and explicitly requests that Ronnie Nicholson to be accompanied by a sheriff's deputy. All Moates could have asked Judge Head would have been whether the Judge actually intended to grant the motion which his order refers to and states is granted. Moates testified that it is not his practice to ask a judge to clarify an order, but Judge Head testified that he has received calls asking for clarification of orders.

Had Moates asked this question of Judge Head, it is entirely unclear what Judge Head's response would have been. In his deposition testimony, Judge Head stated that he is unsure that he had ever seen the motion which was ultimately attached to the order at issue. Judge Head Deposition, page 38:11–12. The Judge also stated that he was unable to state whether he had called the clerk's office in Enterprise and someone read to him or faxed him the content of the motion. *Id.* at pages 49–50. He later clarified that he had not seen the motion. *Id.* at page 50. He also said he could not state whether "Mr. Stokes may have communicated to [a person in the office] on some occasion what items specifically they were looking for." *Id.* at page 52: 11–14. He further stated, "My order is so generically written, I don't know that it's important right now what, [sic] intended but what someone reading

my order would have perceived that I intended." *Id.* at page 52:17–21. When asked in his deposition if he considered the attachment of the motion to his order to be an alteration of the order, however, Judge Head answered, "I don't think in fact there's been any altering." Judge Head Deposition, page 27:19–20. Then, when asked if he considered the attachment of the order to be an altering of the spirit and intent of the order, Judge Head answered, "no, I wouldn't." *Id.* at page 64:15. In his deposition, Judge Head also stated that he did not intend for Ronnie Nicholson to be able to obtain disputed marital property, although he would not have known in an ex parte motion what Carolyn Nicholson considered to be disputed property. Judge Head Deposition, page 51:19, 53:5–10. He also said he did not recall anything about an Oldsmobile. *Id.* at page 52.

■ The factual circumstances of this case are unusual in that this is not a case in which law enforcement acted on a document which ultimately proved to be inaccurate, or in which they erroneously applied a document, or failed to verify a fact which resulted in the seizure of the wrong person's property. *See Wanger v. Bonner,* 621 F.2d 675 (5th Cir.1980) (manner of execution of warrant was unreasonable where police executed the warrant during the early morning hours and failed to verify the out of county address).[4] Instead, it is still unclear, even after the parties have asked Judge Head in his deposition about what he intended by his order, what the intent of the order was. The Plaintiff argues that Judge Head never intended for Ronnie Nicholson to get property of

---

4. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

the marital res and would not have allowed Ronnie Nicholson to take possession of Carolyn Nicholson's car. As Judge Head opined, however, the law enforcement officers were left to interpret what was meant by the order stating that the motion was granted. Judge Head Deposition, page 51:19–21. There was no other motion in the protection order case to which reference could have been made. This court must conclude, therefore, that Moates' reliance on the order and motion was reasonable and the deputies' accompanying Ronnie Nicholson to obtain the listed property was not a constitutional violation. Even if Moates should have checked to see if the motion with the order was the motion which had been filed in the protection order case, had he done so, he would have found that the motion filed in the protection order case was the same in substance as the motion which accompanied Judge Head's order to the sheriff's department. The order refers to the motion and states that it is granted.

Furthermore, even if there were a constitutional violation, the court must conclude that Moates, and the deputies acting at his direction, would be entitled to qualified immunity because there is no clearly established law of which this court is aware that a sheriff, or deputies acting at his direction, must, when presented with an order signed by a judge of competent jurisdiction which states that it grants a motion filed in a case numbered 97–235, and when presented with a motion with a 97–235 case number, call the judge inquire into whether the judge intended to grant the motion which accompanies the judge's written order. Although the Plaintiff has stated that Stokes made representations as to the nature of the motion, there is simply no requirement in the law, of which this court is aware, that a law enforcement officer viewing an order and a motion to which that order appears to refer must, although perhaps he or she should, inquire of the court as to whether the court actually considered the motion that the court granted. The court must conclude, therefore, that summary judgment is due to be GRANTED as to the County Defendants on the alternative grounds of quasi-judicial immunity, the lack of a constitutional violation, and qualified immunity as to this aspect of the Plaintiff's claim.

A separate issue is presented by the conduct of the deputies in executing the order. It is undisputed that the motion provided with the order stated that Ronnie Nicholson could recover specific items in the company of a deputy sheriff and could enter the marital residence. The order, when construed with the motion, allows the sheriff's deputies to accompany Ronnie Nicholson and allows Ronnie Nicholson to obtain a numbered list of property. The order, even when construed with the motion, does not, however, specify the actions the deputies are to take in accompanying Ronnie Nicholson.

■ Although courts are not in complete agreement as to the scope of quasi-judicial immunity, there is persuasive authority for the proposition that absolute immunity does not protect defendants from claims which are based not on the conduct prescribed in the court order itself, but on the manner of its execution. *See Martin v. Board of County Comm'rs,* 909 F.2d 402, 405 (10th Cir.1990); *Richman v. Sheahan,* 2000 WL 343349, (N.D.Ill. March 31, 2000). The reasoning of these courts is that it is common-sense that immunity does not apply to immunize conduct which goes beyond that ordered by the court order. *Richman,* 2000 WL 343349 at *2. The court is persuaded by

the reasoning of these cases that quasi-judicial immunity does not apply where, unlike in *Roland*, the challenged acts are acts which were not explicitly ordered by the judicial order. The court must conclude, therefore, that quasi-judicial immunity does not cover the execution of the order beyond the sheriff's deputies accompanying Ronnie Nicholson into the home and allowing Ronnie Nicholson to obtain property, and that qualified immunity analysis should be applied to the aspect of the Plaintiff's claim regarding the deputies' actions during the seizure of the property.

In analyzing the existence of a constitutional violation based on the enforcement of the judicial order, the court begins with the proposition as stated by the Supreme Court that a showing of unreasonableness is difficult in a situation in which a law enforcement officer is acting pursuant to a court order. *Soldal v. Cook County*, 506 U.S. 56, 71, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). In this case, the motion incorporated into the order authorized the County Defendants to "accompany" Ronnie Nicholson, and the order itself authorized Ronnie Nicholson to enter the marital residence and to recover items of property. *See* Plaintiff's Exhibit 13. Clearly, the County Defendants' attendance during the incident in question and their allowing Ronnie Nicholson to enter the home and obtain the items of property listed was reasonable. The question, therefore, is whether the County Defendants engaged in additional actions which could not reasonably be considered to be a part of "accompanying" Ronnie Nicholson into the home to recover property.

■ The Plaintiff has stated in brief that she "avers" that the deputies never knocked on her door when they arrived at the house. Plaintiff's Brief, page 6. She never cites to any evidence in support of this proposition, however. When asked in her deposition if she let the deputies in "[w]hen they knocked on your door" she answered "no." Carolyn Nicholson Deposition, page 89: 18–20. In any event, mere failure to "knock and announce" is not necessarily a fourth amendment violation. *See United States v. Ramirez*, 523 U.S. 65, 68, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998) (" 'no-knock' entries are justified when police officers have a 'reasonable suspicion' that knocking and announcing their presence before entering would be 'dangerous or futile, or inhibit the investigation of the crime.' ").

The Plaintiff also states in her brief that Killingsworth and Petty never served her with the order, or even showed her the order. Plaintiff's Brief, page 23. The Plaintiff does not cite the court to any evidence to that effect. The court is aware, however, of the Plaintiff's statement in her affidavit that she was never shown the order. The Plaintiff also states that she was shown a list of the property to be seized. Nowicki, a constable, also testified that he looked closely at the clipboard on which Killingsworth had the papers and recalls that it was a paper asking a court to be allowed to remove some items. Nowicki Deposition, page 16:5–10. Nowicki also stated that he spoke to Killingsworth outside of the home and Killingsworth told him that she would not let them in or they could not get in. Nowicki Deposition, page 10: 10–12. Nowicki asked Killingsworth if he had something that would allow them to go in, and Killingsworth "flashed a paper ... [that] said something about Court." *Id.* 10: 16–18. Nowicki then testified that he knocked on the door and told Carolyn Nicholson that Killingsworth had some paperwork. *Id.* at page 11: 5–6.

The document pursuant to which the County Defendants were acting was not a warrant, it was a judicial order. The order was served on the Plaintiff's attorney in the divorce case. Plaintiff's Exhibit 18. There is also testimony that Moates contacted the attorney representing the Plaintiff in the divorce case with regard to the order and was under the impression that the attorney attempted to contact the Plaintiff regarding what would take place in executing the order. There is also testimony that Killingsworth showed the Plaintiff the list of property and that Nowicki told the Plaintiff that Killingsworth had some paperwork. The court cannot conclude, therefore, that Killingsworth's showing the Plaintiff the property list but not the order violated her fourth amendment rights. Furthermore, the Plaintiff has pointed to no case clearly establishing that a failure to serve an order on the Plaintiff under these circumstances, especially where the order reflects that the Plaintiff's attorney was served with the order, the Plaintiff has acknowledged that she was shown the list of property, and the constable whom the Plaintiff called to assist her told her that the sheriff's department had paperwork, apparently to let her know that the sheriff's deputies were authorized to enter the house, is a violation of constitutional rights.

■ The Plaintiff has included in her opposition to summary judgment evidence that Killingsworth forced his way into her home, that he threatened her with arrest, and that there were several officers on the scene during the seizure of property.[5] The Plaintiff testified in her deposition that she does not know whether only the movers removed items from her house or whether the deputies also did so. Carolyn Nicholson Deposition, page 167. She said that Killingsworth took a printer, but then brought it back, and that he brought her her purse so that she could look for her car keys in it. Id.[6] She further stated that Petty helped move some of the bigger items away from the wall, but that she did not personally see him carry anything out of the house. Id. at 174. As the Plaintiff characterized it in her brief, the deputies "ensured that Ronnie and the movers had seized everything listed on the unfiled motion." Plaintiff's Brief, page 7. Nowicki stated that most of the people looking through items in the house were not in uniform, although Killingsworth did look around on the counter island and the counter by the sink to see if he could find the keys. Nowicki Deposition page 38. Nowicki further described Killingsworth's actions as "looking around on the things laying out on the counter trying to find a set of car keys" and stated that he did not see Killingsworth open any doors. Nowicki Deposition, page 49: 12–16.

Because there appear to be relatively few cases analyzing police officers' reasonableness in enforcing a court order, in determining whether the County Defendants' actions were reasonable, the court looks for guidance to cases governing the reasonableness of searches pursuant to search warrants.

■ The Supreme Court has stated that the general touchstone of reasonableness which governs Fourth Amendment analysis, see *Pennsylvania v. Mimms*, 434 U.S. 106, 108–109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam), governs the meth-

---

**5.** The Plaintiff has not asserted a claim for excessive force.

**6.** There is no claim for an unreasonable search asserted in this case.

od of execution of the warrant. *See United States v. Ramirez*, 523 U.S. 65, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998). The test of reasonableness under the Fourth Amendment is a balancing test. "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

The court must conclude that all of the evidence of the County Defendants' actions, including that a copy of the order was not served on the Plaintiff, even when construed in a light most favorable to the Plaintiff, does not establish that they acted unreasonably in executing the judicial order. There is no evidence that they threatened or engaged in physical violence or that they destroyed any property. At most, there were perhaps more deputies than were necessary to carry out Judge Head's order. There is also no evidence that any item ultimately seized was taken from the premises by the County Defendants. Instead, the County Defendants accompanied Ronnie Nicholson into the house, as provided in the order and "ensured" that Ronnie Nicholson and the movers seized the items listed on the motion which accompanied the Judge's order.

In addition, the Plaintiff has not established that the County Defendants violated clearly established law of which they should have been aware at the time of the incident. The Plaintiff argues that the County Defendants are not entitled to claim the protection of qualified immunity because they were not acting within their discretionary authority when they conducted a seizure in violation of the United States Constitution. This court has rejected an identical argument, concluding that

pinning the discretionary authority requirement to the legality of the action conflates the two inquiries under qualified immunity analysis. *See Williams v. Goldsmith*, 4 F.Supp.2d 1112, 1123 (M.D.Ala. 1998).

As to the clearly established law prong of the qualified immunity analysis, the Plaintiff has cited to no case clearly establishing that similar actions are violative of constitutional rights. The County Defendants distinguish this case from an earlier decision by this court in which the court determined that it is clearly established that an officer cannot actively assist or participate in a private seizure, unless the officer has the proper process ordering him to do so, by stating that the Defendants in this case were acting pursuant to a court order. *See Williams*, 4 F.Supp.2d at 1124. This court must agree that the facts of this case are distinct from the facts in *Williams* because, although the County Defendants assisted in the private seizure by accompanying Ronnie Nicholson and by ensuring that Ronnie Nicholson was able to obtain the listed items, they were acting pursuant to a court order.

Although it was clearly established by the Supreme Court in *Soldal v. Cook County, Ill.*, 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), that participation by sheriff's deputies in an unlawful seizure is a violation of a property owner's constitutional rights, the Court stated that unreasonableness is difficult to establish if the state actors were acting pursuant to a court order. The court noted that "had the ejection in this case properly awaited the state court's judgment it is quite unlikely that the federal court would have been bothered with a § 1983 action alleging a Fourth Amendment violation." *Id.* at 71, 113 S.Ct. 538.

Since this is a case wherein the County Defendants were acting pursuant to a court order, therefore, there is a presumption that their actions were reasonable. *Miller v. City of Columbus,* 920 F.Supp. 807, 820 (S.D.Ohio 1996). There are also cases which would support a conclusion that particular acts by the County Defendants were reasonable. For instance, cases which establish as reasonable an officer's detention of a person in order to aid the execution of a warrant or order allowing for seizure of property. *See Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) (a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted); *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.,* 32 F.3d 989 (6th Cir.1994) (questioning a witness for five minutes during repossession of a truck did not violate the person's rights under the Fourth Amendment because the detention was to gather information for the report.).

The Plaintiff has failed to meet her burden of pointing to caselaw which would clearly establish that the County Defendants violated her constitutional rights. In the absence of any case law clearly defining that the County Defendants' acts were unlawful, and in light of the fact that there is case law which supports a conclusion that particular acts were indeed lawful, this court must conclude that, even if there had been a constitutional violation during the enforcement of the court order, the County Defendants are entitled to qualified immunity.

■■■ The Plaintiff also argues that she has stated a claim against Moates in his individual capacity for unlawful seizure based upon supervisor liability. For a supervisor to be liable under section 1983, his liability must be based on something more than the theory of respondeat superior. *Braddy v. Florida Dep't of Labor & Employment Security,* 133 F.3d 797, 801 (11th Cir.1998). "Supervisor liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Id.* (quoting *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990)).

■■■ The Plaintiff points to Moates' testimony that the unwritten policy of his department requires his employees to be sure that there is a valid order directing the sheriff to take action before entering a residence or seizing property. Moates Deposition page 26. The policy which the Plaintiff apparently contends led to a deprivation of constitutional rights, however, is based on the deposition testimony of Petty wherein he states it is a custom of the department to execute court orders whether they direct the sheriff's department to seize property or not, as long as the order states that a person is entitled to the property. Petty Deposition, pages 26–28. Even assuming that this is a policy, it was not the operating policy in this case where the County Defendants have relied on an order which refers to a motion which requests that they accompany the person recovering property. Accordingly, even if this custom exists, it would not be the cause of any constitutional deprivation in this case. In any event, the court cannot conclude that there was a constitutional violation by the deputies in this case, and so summary judgment is due to be granted as to this claim against Moates as well.

### Ronnie Nicholson

██ The Plaintiff argues that Ronnie Nicholson can be held liable for a violation of her Fourth Amendment rights by virtue of having acted in concert with the County Defendants. Ronnie Nicholson contests that he is a state actor and, therefore, argues that he cannot be held liable for a constitutional violation. Assuming that Ronnie Nicholson's actions in accompanying the County Defendants to the home and in removing property are state actions because accomplished with the aid of the County Defendants, Ronnie Nicholson's action are within the scope of the judicial order and motion. The order allows for him to enter the marital residence and to obtain property. *See* Plaintiff's Exhibit 13. The motion lists the property to be obtained. *Id.* There is no evidence that he took actions which would be considered unreasonable. Therefore, with regard to the actual entry onto the property and removal of the property, the court must conclude that even if Ronnie Nicholson is a state actor, he did not violate the Plaintiff's constitutional rights.

██ The Plaintiff has, however, articulated a different theory of liability as against Ronnie Nicholson. According to the Plaintiff, Ronnie Nicholson, through his agent Stokes, perpetrated fraud on the court. This argument by the Plaintiff is little more than speculation. There is no evidence as to what was represented to Judge Head.[7] The court has reviewed Judge Head's deposition testimony and it is still unclear exactly what Judge Head believed to be the substance of the motion he granted. It is clear, however, that Judge Head did not speak to Stokes directly. This court cannot, therefore, conclude even for purposes of summary judgment that sufficient evidence as been presented to establish that Nicholson, or Stokes, perpetrated fraud on the court. In addition, because there is no evidence to establish that Ronnie Nicholson made any representations to Judge Head as to the nature of the pending motion, nor any evidence to establish that he was aware of any representations made by his lawyer, there is no evidence to establish either that Ronnie Nicholson was acting in concert with his attorney, or that he was using state procedures or acting in concert with any state actors to secure the judicial order so as to place his actions under color of state. Ronnie Nicholson cannot be held liable for a violation of § 1983 based solely on the acts of an agent. *See Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990) (no respondeat superior liability under § 1983).[8] Accordingly, the unsupported allegation that Stokes as Ronnie Nicholson's lawyer perpetrated a fraud on the court, and ultimately on the County Defendants who acted on the court order, is insufficient to create a genuine issue of fact for trial.

7. The court recognizes that there were some discovery matters ruled upon by the Magistrate Judge which concerned this matter. The court is merely pointing out that for purposes of summary judgment, this court cannot merely assume in the absence of any evidentiary support that Stokes, a member of the bar, made misrepresentations to Judge Head. This is a serious allegation on the part of the Plaintiff and is one which the Plaintiff could pursue in other fora if she feels it is well-grounded.

8. Of course, in finding that Ronnie Nicholson does not bear any liability under § 1983, the court does not intend to imply that it condones the alleged actions of Ronnie Nicholson or Stokes in representing the content of the motion if, as Plaintiff alleges, it is true that either Stokes or Ronnie Nicholson was attempting to deceive Judge Head as to the substance of the motion.

### Robert Caswell

The Plaintiff has argued that she called the Enterprise police and informed them that there was a warrant against Ronnie Nicholson and that he was present in her house. Caswell stated that he did not arrest Ronnie Nicholson immediately upon arriving at the house because he did not have a warrant in hand, and that he waited until another officer brought him the warrant. Caswell Deposition, page 12:13–18. Caswell testified that he cannot recall whether the County Defendants asked him to wait until they had finished before arresting Ronnie Nicholson. *Id.* at page 13: 2–6. He states that after he received the warrant, he stood outside because he did not see a reason for them to be in the house at that time. *Id.* at page 21:14–15. The theory of liability articulated by the Plaintiff based on these facts is that Caswell should have taken Ronnie Nicholson into custody to prevent him from obtaining additional property.

■ Caswell argues that since he did not participate in any seizure of property, he cannot be held liable for a Fourth Amendment violation. The Plaintiff responds that law enforcement officers who are present at the scene and observe an individual's constitutional rights being violated may be held liable for nonfeasance. *See Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441 (11th Cir.1985). First, the court cannot conclude that the seizure of property in this case was a constitutional violation pursuant to which any of the defendants could be held liable. Second, even assuming that an unlawful seizure of property can give rise to liability under a "nonfeasance" theory, *see Sims v. Glover*, 84 F.Supp.2d 1273 1282 n. 4 (M.D.Ala. 1999), the Plaintiff has pointed to no, and the court is not aware of any, Eleventh Circuit precedent applying a nonfeasance theory outside of the context of an excessive force case. Accordingly, Caswell would also be entitled to qualified immunity.

### B. State Law Claims

■ The Plaintiff has asserted that this court has supplemental jurisdiction over her conversion and assault and battery claims. It is questionable, however, whether this court has supplemental jurisdiction over the Plaintiff's assault and battery claims. The Plaintiff claims that Ronnie Nicholson assaulted and battered her on October 1, 1997. The seizure of property in question occurred in July 1998. The only connection between the two events is that the motion pursuant to which the property was seized was originally filed in the case brought by the Plaintiff as a result of the assault and battery. Accordingly, the court does not have supplemental jurisdiction over this claim. *Roberts v. Lakeview Community Hospital*, 985 F.Supp. 1351, 1351 (M.D.Ala.1997) (no supplemental jurisdiction over an assault and battery claim where the federal claim was a Title VII demotion claim).

Even if the court does have supplemental jurisdiction over the assault and battery claim, the court finds that since summary judgment is due to be granted as to the federal claims in this case, the court will decline to exercise supplemental jurisdiction over the state law claims for assault and battery and conversion. 28 U.S.C. § 1367(c).

### V. CONCLUSION

For the reasons discussed, the court concludes that the Motions for Summary Judgment filed in this case are due to be

GRANTED as to the federal claims and that the state law claims are due to be DISMISSED without prejudice. A separate Order will be entered in accordance with this Memorandum Opinion.

### *ORDER*

In accordance with the Memorandum Opinion entered on this date, it is hereby ORDERED as follows:

1. The Motion for Summary Judgment (Doc. #56) filed by Defendant Robert Caswell is GRANTED as to the federal claim and judgment is entered as to Robert Caswell and against Carolyn Nicholson on the federal claim. The state law claim against Robert Caswell is DISMISSED without prejudice to being filed in state court.

2. The Motion for Summary Judgment (Doc. #58) filed by Defendant Claude R. Nicholson is GRANTED as to the federal claim and judgment is entered in favor of Claude R. Nicholson and against Carolyn Nicholson on the federal claim. The state law claims against Claude R. Nicholson are DISMISSED without prejudice to being filed in state court.

3. The Motion for Summary Judgment (Doc. #60) filed by Defendants Ben Moates, Rex Killingsworth, Jack Herbert, Henry Petty, and Myron Williams is GRANTED and judgment is entered in favor of Ben Moates, Rex Killingsworth, Jack Herbert, Henry Petty, and Myron Williams and against Carolyn Nicholson.

4. Costs are taxed against the Plaintiff.